IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| | : | Chapter 11 |
| HOUSTON REGIONAL SPORTS NETWORK, L.P. | : | |
| | : | |
| Alleged Debtor. | : | Case No.: 13-35998 |
| | : | |
| | : | |

**PETITIONING CREDITORS' MOTION TO SEAL EXHIBITS
CONTAINING CONFIDENTIAL RATE INFORMATION**

At the hearing in this matter conducted on October 28th and 29th, 2013 (the "Hearing"), the Court pre-admitted certain exhibits containing confidential business information, specifically rate card and related information in connection with offers and counter-offers for affiliation agreements and proposed affiliation agreements with potential distributors of Houston Regional Sports Network, L.P. (the "Alleged Debtor" or the "Network").  Because the information is highly sensitive and would cause competitive harm to the Network if publicly disclosed, Houston SportsNet Finance, LLC, Comcast Sports Management Services, LLC, National Digital Television Center, LLC, and Comcast SportsNet California, LLC (collectively, the "Petitioning Creditors") move the Court to enter an order sealing certain portions of these specific exhibits.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

WEST\245192424.6

#85284210v8

**ARGUMENT**

2.  Section 107(b)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest, the bankruptcy court shall … (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information." 11 U.S.C. § 107(b)(1).

3.  Bankruptcy Rule 9018 implements Section 107(b) of the Bankruptcy Code and similarly provides that the Court may make any order justice requires to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information. *See In re Meyrowitz*, No. 06-31660-bjh-11, 2006 WL 6544093, at *2 (N.D. Tex. Bankr. Oct. 27, 2006).

4.  A party seeking to prevent public disclosure of confidential information "must show that the information … is 'confidential' and 'commercial' in nature." *Id*. (citing *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994)). However, "[c]onfidential commercial information does not need to rise to the level of trade secret in order to obtain protection under § 107(b)(1)." *Id.* (citing *Orion Pictures*, 21 F.3d at 28). Rather, information may be protected if its disclosure "could reasonably be expected to cause the entity commercial injury." *Id*. (citing *In re Northstar Energy, Inc.*, 315 B.R. 425, 428-429 (E.D. Tex. Bankr. 2004)). Such injury includes giving an "'unfair advantage to competitors by providing them information as to the commercial operations of the debtor.'" *Orion Pictures*, 21 F.3d at 28 (quoting *In re Intel Corp.*, 17 B.R. 942, 944 (9th Cir. B.A.P. 1982)).

5.  No entity need be adjudged a debtor before an order to protect confidential information can be entered. *See Northstar Energy, Inc.*, 315 B.R. at 429. And courts have extended the protections of Rule 107(b)(1) to creditors whose information was at risk of being disclosed. *See id*. (citing *In re Nunn*, 49 B.R. 963 (Bankr. E.D. Va. 1985)).

-2-

6. Finally, as courts have recognized, "if the information fits any of the specified categories [in Section 107(b)], the court is *required* to protect a requesting interested party and has no discretion to deny the application." *Orion Pictures*, 21 F.3d at 27 (citing 2 COLLIER ON BANKRUPTCY, P 107.01, at 107-2 (15th ed. 1993)); *accord, e.g.*, *Northstar Energy*, 315 B.R. at 428 ("§ 107(b) *mandates* the protection of certain types of information.").

A. **The Rate Card and Related Information Is Confidential Commercial Information and Should Be Sealed to Prevent Competitive Harm to the Network.**

7. Under the foregoing standards, the rate card information at issue (as well as information derivative of such rate card information) should be protected from public disclosure because, if disclosed, such information would cause competitive injury to the Network.

8. Since before its launch, the Network has been engaged in negotiations with potential distributors regarding carriage of the Network, including with respect to the rates that distributors would pay for the Network's programming. Those negotiations have included proposals and counter-proposals regarding per-subscriber rates that the Network would charge potential distributors to carry the Network.

9. As testimony at the Hearing demonstrated, the rates the Network can secure from distributors are central to the Network's commercial viability. Furthermore, testimony established that it has been the experience of Comcast's Executive Vice President of Content Distribution that once a single distributor agrees to an affiliation agreement with a network, other distributors frequently follow suit.

10. Allowing potential distributors to know the rates that were being internally considered in connection with the negotiations or the rates that were offered to other distributors would impair future negotiations, including, for example, potentially setting a rate ceiling on

future negotiations. This potentially would reduce the amount of revenue that the Network could generate if a distributor or distributors otherwise would have agreed to carry the Network at a higher price.

11. Accordingly, the rate information is unquestionably "'information as to the commercial operations of the debtor'" that should be protected. *Orion Pictures*, 21 F.3d at 28 (quoting *In re Intel Corp.*, 17 B.R. at 944); *see also id.* at 27-28 (affirming bankruptcy court's decision to allow license agreement to be sealed: "disclosing the sealed information, including the overall structure, terms and conditions of the McDonald's Agreement, renders very likely a direct and adverse impairment to Orion's ability to negotiate favorable promotion agreements with future customers, thereby giving Orion's competitors an unfair advantage").

12. In addition, the Network and others in this industry recognize the confidential nature and commercial sensitivity of this kind of information in their own contracts. For example, the affiliation agreements with distributors who have agreed to carry the Network provide that the terms of those agreements, including rate information, should not be disclosed publicly. Moreover, the Network and its owners have maintained the confidentiality of rate information during the negotiation process with potential distributors, taking steps to protect it from being disclosed publicly. Among other things, proposals and counter-proposals by the Network were made with the express understanding that the terms of such offers would be maintained confidentially by the potential distributors.

**B.   Admitted Exhibits Should Be Sealed.**

13. At the Hearing, the parties provided the Court with binders of exhibits (the "Hearing Binders"). These Hearing Binders included (1) a binder of exhibits designated "Joint Exhibits"; (2) a binder of exhibits designated "Petitioning Creditors' Exhibits"; and (3) a binder

-4-

of exhibits designated "Astros' Exhibits." The Astros and the Petitioning Creditors stipulated as to admissibility of all of the exhibits in each of the Hearing Binders, and all of the exhibits were pre-admitted into evidence. Certain of the exhibits in the Hearing Binders contain rate card information (and information derivative of such rate card information) that is the subject of this motion. In their presentations to the Court during the Hearing, both the Petitioning Creditors and the Astros to maintained the confidentiality of the rate information reflected in those exhibits. The confidential rate information was never displayed or otherwise disclosed in open court by either party.

14. In light of the commercially sensitive nature of the rate information and the harm that public disclosure of such information would cause to the Network, the Petitioning Creditors respectfully request that the Court seal any exhibits which contain confidential rate card information and not make publicly available any unredacted exhibits from the Hearing Binders which contain such information. The exhibits that contain confidential rate card information are identified in Exhibit A to this Motion.

15. So that the Court has a set of exhibit binders that can be made available as part of the public record, the Petitioning Creditors will provide the Court with new binders containing copies of the Joint Exhibits, the Petitioning Creditors' Exhibits and the Astros' Exhibits, with the exhibits listed on Exhibit A redacted to conceal rate-related information (collectively, the "Redacted Binders"). These Redacted Binders will be provided to the Court as soon as possible, following their review by counsel to Houston Astros, LLC, Astros HRSN GP Holdings LLC and Astros HRSN LP Holdings LLC (collectively, the "Astros"). The Petitioning Creditors respectfully request that only the exhibits contained in the Redacted Binders, and not the exhibits

from the Hearing Binders (which contain unredacted versions of the exhibits listed in Exhibit A), be made available for public inspection.[1]

## CONCLUSION

For the foregoing reasons, the Petitioning Creditors' motion to seal exhibits containing confidential information should be granted.

Respectfully submitted,

| | |
|---|---|
| Howard M. Shapiro | /s/ Vincent P. Slusher |
| Craig Goldblatt | Vincent P. Slusher |
| Jonathan Paikin | Andrew Zollinger |
| WILMER CUTLER PICKERING | DLA PIPER LLP |
|     HALE AND DORR LLP | 1717 Main Street |
| 1875 Pennsylvania Avenue N.W. | Suite 4600 |
| Washington, D.C.  20006 | Dallas, Texas  75201-4629 |
| (202) 663-6000 | (214) 743-4500 |
| | |
| George W. Shuster, Jr. | Arthur J. Burke |
| WILMER CUTLER PICKERING | Timothy Graulich |
|     HALE AND DORR LLP | Dana M. Seshens |
| 7 World Trade Center | DAVIS POLK & WARDWELL LLP |
| 250 Greenwich Street | 450 Lexington Avenue |
| New York, New York  10007 | New York, New York  10017 |
| (212) 230-8800 | (212) 450-4000 |

*Counsel for the Petitioning Creditors*

Dated:  November 12, 2013

---

[1] Separately, the Petitioning Creditors understand that, during the hearing, the Court may have rearranged or removed some of the exhibits in the Hearing Binders originally provided to the Court at the Hearing.  Accordingly, for the Court's convenience, the Petitioning Creditors will also provide additional copies of the Hearing Binders (again, following review by the Astros), containing complete, *unredacted* versions of the trial exhibits.  In accordance with this motion, the Petitioning Creditors respectfully request that these additional copies of the Hearing Binders not be made public in order to prevent disclosure of the confidential rate-related information.