# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| In re | Chapter 11 |
| HOUSTON REGIONAL SPORTS NETWORK, L.P. | Case No. 13-35998 |
| Debtor. | |

## AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 4, 2014 IN RESPECT OF HOUSTON REGIONAL SPORTS NETWORK, L.P.

# **TABLE OF CONTENTS**

Page

EXHIBITS

Glossary of Defined Terms.......................................................................Exhibit A

Investment Agreement………………………………………………..…Exhibit B

Houston Regional Sports Network, L.P. ("Debtor"), a debtor in possession in the above-captioned chapter 11 case, and the other Proponents hereby propose the following chapter 11 plan of reorganization for the Debtor:

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

**1.1** **Definitions.**

The capitalized terms used herein shall have the respective meanings set forth in the Glossary of Defined Terms attached hereto as Exhibit A.

**1.2** **Interpretation.**

Unless otherwise specified, all section, article, and exhibit references in the Plan are to the respective section in, article of, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. Words denoting the singular number shall include the plural number and vice versa, as appropriate, and words denoting one gender shall include the other gender.

**1.3** **Application of Definitions and Rules of Construction Set Forth in the Bankruptcy Code.**

Words and terms defined in section 101 of the Bankruptcy Code shall have the same meanings when used in the Plan, unless a different definition is given in the Glossary of Defined Terms. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**1.4** **Other Terms.**

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.

**1.5** **Appendices and Plan Documents.**

All appendices to the Plan and the Plan Documents are incorporated into the Plan by this reference and are a part of the Plan as if set forth in full herein. All Plan Documents not otherwise filed herewith shall be filed with the clerk of the Bankruptcy Court prior to the commencement of the Confirmation Hearing. Holders of Claims may obtain a copy of the Plan Documents, once filed, by a written request sent to the following address:

Haynes and Boone, LLP
1221 McKinney Street, Suite 2100
Houston, TX 77010
Attention: Charles A. Beckham, Esq.
Telephone: (713) 547-2243
Facsimile: (713) 236-5638

# ARTICLE II

## CLASSIFICATION OF CLAIMS AND LIMITED PARTNERSHIP INTERESTS

For the purposes of organization, voting and all confirmation matters, except as otherwise provided herein, all Claims against and Limited Partnership Interests in the Debtor shall be classified as set forth in this Article II.

**2.1    Administrative Claims and Tax Claims.**

As provided by section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Claims shall not be classified under the Plan, and shall instead be treated separately as unclassified Claims on the terms set forth in Article V.

**2.2    Classification of Claims and Limited Partnership Interests.**

The classes of Claims and Limited Partnership Interests against the Debtor shall be classified under the Plan as follows:

Class 1 – Priority Claims.  Class 1 shall consist of all Priority Claims against the Debtor.

Class 2 – Comcast Lender Secured Claim.  Class 2 shall consist of the Comcast Lender Secured Claim against the Debtor.

Class 3 – Other Secured Claims.  Class 3 shall consist of all Other Secured Claims against the Debtor.

Class 4 – Trade Claims.  Class 4 shall consist of all Trade Claims against the Debtor.

Class 5 – Unsecured Claims.  Class 5 shall consist of all Unsecured Claims against the Debtor.

Class 6 – Subordinated Claims.  Class 6 shall consist of all Subordinated Claims against the Debtor.

Class 7 – Limited Partnership Interests.  Class 7 shall consist of the Limited Partnership Interests in the Debtor.

**2.3    Separate Classification of Secured Claims.**

Although Other Secured Claims against the Debtor have been placed in one category for ease of reference, each Other Secured Claim shall be treated as a separate class for purposes of voting on the Plan and receiving Plan Distributions.  Such classes comprised of individual Other Secured Claims shall be designated as Class 3A, Class 3B, Class 3C, etc.

## ARTICLE III

## IDENTIFICATION OF IMPAIRED
## CLASSES OF CLAIMS AND LIMITED PARTNERSHIP INTERESTS

**3.1**      **Unimpaired Classes of Claims and Limited Partnership Interests.**

Class 1 – Priority Claims are not impaired under the Plan.  Class 3 – Other Secured Claims that are reinstated are not impaired under the Plan.

**3.2**      **Impaired Classes of Claims and Limited Partnership Interests.**

Except as provided in Section 3.1, all classes of Claims and Limited Partnership Interests are impaired under the Plan.

**3.3**      **Impairment Controversies.**

If a controversy arises as to whether any Claim or Limited Partnership Interest or any class of Claims or Limited Partnership Interests is impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

## ARTICLE IV

## PROVISIONS FOR TREATMENT OF CLAIMS AND
## LIMITED PARTNERSHIP INTERESTS UNDER THE PLAN

**4.1**      **Treatment of Claims.**

The classes of Claims against and Limited Partnership Interests in the Debtor shall be treated under the Plan as follows:

      (a)    Class 1 – Priority Claims.

Each holder of an Allowed Priority Claim against the Debtor shall receive, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), either (i) cash in the amount of such holder's Allowed Priority Claim; or (ii) such other treatment as may be agreed upon by the Debtor or the Disbursing Agent, if after the Effective Date, and such holder; provided, however, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed Priority Claim.

      (b)    Class 2 – Comcast Lender Secured Claim.

To the extent that the Comcast Lender Secured Claim is Allowed, the holder of the Comcast Lender Secured Claim shall receive, on the Plan Distribution Date (or as soon as reasonably practicable thereafter), Cash in an amount equal to such Comcast Lender Secured Claim.

H-1049241_8

(c)   Class 3 – Other Secured Claims.

Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, at the option of the Proponents and with the consent of AT&T and DTV, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), each Allowed Other Secured Claim shall (i) be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, (ii) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (iii) receive the collateral securing its Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, in each case, in full and complete satisfaction of such Allowed Other Secured Claim.

(d)   Class 4 – Trade Claims.

On the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), each holder of an Allowed Trade Claim shall receive, in complete satisfaction of its Allowed Trade Claim, (i) the right to payment of its Allowed Trade Claim in full and in Cash in four separate and equal installments without interest and (ii) a release by the Debtor of all Avoidance Actions held by the Debtor against such holder.  The first payment of such Allowed Trade Claim shall be made on or about the later of (i) the Effective Date and (ii) the date such Trade Claim becomes Allowed.  Thereafter, the holder of such Allowed Trade Claim shall receive three additional payments on the last Business Day of each succeeding calendar quarter.

(e)   Class 5 –Unsecured Claims.

Each holder of an Allowed Unsecured Claim shall receive, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), its Pro Rata Share of the Class A Litigation Trust Beneficial Interests.

(f)   Class 6 – Subordinated Claims.

Each holder of an Allowed Subordinated Claim shall receive, on the applicable Plan Distribution Date (or as soon as reasonably practicable thereafter), its Pro Rata Share of the Class B Litigation Trust Beneficial Interests.

(g)   Class 7 – Limited Partnership Interests.

Each holder of a Limited Partnership Interest shall receive, on the applicable Plan Distribution Date (on as soon as reasonably practicable thereafter), its Pro Rata Share of the Class C Litigation Trust Beneficial Interests.

# ARTICLE V

## PROVISIONS FOR TREATMENT
## OF UNCLASSIFIED CLAIMS UNDER THE PLAN

**5.1** **Unclassified Claims.**

Administrative Claims and Tax Claims are treated in accordance with sections 1129(a)(9)(A) and 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are not designated as classes of Claims for the purposes of this Plan or for the purposes of sections 1123, 1124, 1125, 1126 or 1129 of the Bankruptcy Code.

**5.2** **Treatment of Administrative Claims.**

All Administrative Claims shall be treated as follows:

(a) Time for Filing Administrative Claims.

The holder of an Administrative Claim, other than (i) a Fee Claim; (ii) a liability incurred and payable in the ordinary course of business by the Estate (and not past due); or (iii) an Administrative Claim that has been Allowed on or before the Effective Date, must file with the Bankruptcy Court and serve on the Disbursing Agent, the Proponents and the Office of the United States Trustee, notice of such Administrative Claim within forty (40) days after service of Notice of Confirmation. Such notice must include at a minimum (A) the name of the holder of the Claim; (B) the amount of the Claim; and (C) the basis of the Claim. **Failure to file and serve such notice timely and properly shall result in the Administrative Claim being forever barred and discharged.**

(b) Time for Filing Fee Claims.

Each Professional Person who holds or asserts a Fee Claim shall be required to file with the Bankruptcy Court, and serve on the Disbursing Agent, the Proponents and on all parties required to receive notice, a Fee Application within forty-five (45) days after the Effective Date. **The failure to timely file and serve such Fee Application shall result in the Fee Claim being forever barred and discharged.**

(c) Allowance of Administrative Claims/Fee Claims.

An Administrative Claim with respect to which notice has been properly filed and served pursuant to Section 5.2(a) shall become an Allowed Administrative Claim if no objection is filed within sixty (60) days after the later of (i) the Effective Date; and (ii) the date of service of the applicable notice of Administrative Claim or such later date as may be approved by the Bankruptcy Court on motion of a party in interest, without notice or a hearing. If an objection is filed within such 60-day period (or any extension thereof), the Administrative Claim shall become an Allowed Administrative Claim only to the extent allowed by Final Order. A Fee Claim in respect of which a Fee Application has been properly filed and served pursuant to Section 5.2(b) shall become an Allowed Administrative Claim only to the extent allowed by order of the Bankruptcy Court.

(d)   Payment of Allowed Administrative Claims.

On the applicable Plan Distribution Date, each holder of an Allowed Administrative Claim shall receive (i) the amount of such holder's Allowed Claim in one Cash payment; or (ii) such other treatment as may be agreed upon in writing by the Debtor or the Disbursing Agent, if after the Effective Date, and such holder; provided, however, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of such holder's Allowed Administrative Claim; and provided further that an Administrative Claim representing a liability incurred and payable in the ordinary course of business of the Estate may be paid at the Debtor's election in the ordinary course of business.

**5.3   Treatment of Tax Claims.**

On the applicable Plan Distribution Date, each holder of an Allowed Tax Claim shall receive in full satisfaction of such Allowed Tax Claim either (i) cash in the amount of such holder's Allowed Tax Claim; or (ii) such other treatment  as may be agreed upon by the Debtor or the Disbursing Agent, if after the Effective Date, and such holder; provided, however, that such treatment shall not provide a return to such holder having a present value as of the Effective Date in excess of the amount of such holder's Allowed Tax Claim.  The Confirmation Order shall enjoin any holder of an Allowed Tax Claim from commencing or continuing any action or proceeding against the Reorganized Debtor, the Debtor or any responsible person, officer or director of the Reorganized Debtor or the Debtor that otherwise would be liable to such holder for payment of a Tax Claim.  So long as the holder of an Allowed Tax Claim is enjoined from commencing or continuing any action or proceeding against any responsible person, officer or director under this Section 5.3 or pursuant to the Confirmation Order, the statute of limitations for commencing or continuing any such action or proceeding shall be tolled.

**ARTICLE VI**

**ACCEPTANCE OR REJECTION OF THE PLAN;**
**EFFECT OF REJECTION BY ONE OR MORE**
**CLASSES OF CLAIMS**

**6.1   Classes Entitled to Vote.**

Except for Class 1 – Priority Claims and Class 3 – Other Secured Claims that are to be reinstated, all classes of Claims and Limited Partnership Interests are entitled to vote on the Plan.

**6.2   Presumed Acceptance of the Plan.**

Class 1 – Priority Claims and Class 3 – Other Secured Claims that are to be reinstated are unimpaired.  Each Holder of a Claim in such Classes is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

**6.3**    **Class Acceptance Requirement.**

A class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in such class that have voted on the Plan.   A class of Limited Partnership Interests shall have accepted the Plan if it is accepted by holders of at least two-thirds (2/3) in amount of the Allowed Limited Partnership Interests in that class that have voted on the Plan.

**6.4**    **Vacant Classes.**

Any Class of Claims or Limited Partnership Interests that does not have a Holder of an Allowed Claim or Allowed Limited Partnership Interest or a Claim or Limited Partnership Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and shall be presumed to have accepted the Plan.

**6.5**    **Cramdown.**

If all applicable requirements for confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code, <u>except</u> subsection (8) thereof, then the Plan shall be treated as a request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims and Limited Partnership Interests that is impaired under, and has not accepted, the Plan.

**ARTICLE VII**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**7.1**    **Operations Between the Confirmation Date and the Effective Date.**

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as a debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules and all orders of the Bankruptcy Court that are then in full force and effect.

**7.2**    **The Reorganized Debtor.**

On the Effective Date, each of the following shall occur or shall be deemed to have occurred:

(a)       All of the Limited Partnership Interests in the Debtor shall be cancelled and the Debtor Constituent Documents shall be rejected pursuant to section 365 of the Bankruptcy Code to the extent such agreements are executory and shall otherwise be cancelled and of no further force and effect;

(b)       The Debtor shall be converted into a Delaware limited liability company

pursuant to section 17-219 of the Delaware Uniform Limited Partnership Act and section 18-214 of the Delaware Limited Liability Company Act and shall be governed by the Reorganized Debtor Company Agreement;

(c)     The AT&T Member shall receive the AT&T Reorganized Debtor Membership Interest on the terms and conditions set forth in the Investment Agreement and shall make all funding commitments required thereby;

(d)     The DTV Member shall receive the DTV Reorganized Debtor Membership Interest set forth in the Investment Agreement and shall make all funding commitments required thereby;

(e)     The AT&T Member shall enter into the AT&T Affiliation Agreement;

(f)     DTV shall enter into the DTV Affiliation Agreement;

(g)     Astros, LLC and Rocket Ball shall enter into the respective New Media Rights Agreements; and

(h)     DTV shall enter into the Network Services Agreement.

## 7.3     **Comcast Services.**

On the Effective Date, the Comcast Services Agreement shall be deemed terminated pursuant its terms, including pursuant to Section 4.2(m) thereof.  Any Claims arising from such termination, including claims related to the applicability of Section 4.2(m), shall constitute Contested Claims and the Proponents reserve all of their rights, claims and Causes of Action against Comcast Services notwithstanding the termination of the Comcast Services Agreement pursuant to the Plan.  Without limiting the generality of the foregoing, the Proponents reserve all of their rights to subordinate any Claims (if any) that Comcast Services may have against the Debtor and its Estate.  Any Allowed Claims of Comcast Services against the Debtor, including Claims for indemnification, reimbursement and/or contribution, shall constitute Unsecured Claims, unless subordinated, in which case they shall constitute Subordinated Claims.

## 7.4     **Media Rights.**

(a)     <u>Rejection of Media Rights Agreements</u>.  The Plan shall constitute a motion by the Debtor to reject the Astros Media Rights Agreement and the Rockets Media Rights Agreement.  Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of the rejection of each of the Astros Media Rights Agreement and the Rockets Media Rights Agreement pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected agreement is in the best interests of the Debtor and its Estate.   Any rejection claims relating to the rejection of the Astros Media Rights Agreement or Rockets Media Rights Agreement shall be filed as required by Section 12.3 of the Plan and shall constitute Unsecured Claims.  On the Effective Date, and solely to the extent this Plan is consummated, the Astros Entities and the Rockets Entities shall be deemed to have waived any right to assert that the Past Due Astros Media Rights Payments and the Past Due

Rockets Media Rights Payments constitute Priority Claims.  Any Claims arising from the Past Due Astros Media Rights Payments and the Past Due Rockets Media Rights Payments shall constitute Unsecured Claims.

(b)　　　**New Media Rights Agreements**.  On the Effective Date, the Reorganized Debtor shall enter into the Astros New Media Rights Agreement and the Rockets New Media Rights Agreement.

## 7.5　　**Litigation Trust**.

(a)　　　Formation.  Pursuant to section 1123(a)(5) of the Bankruptcy Code on the Effective Date:

(i)　　　The Litigation Trust shall be created pursuant to the Litigation Trust Declaration.   The Litigation Trust Declaration shall constitute a Plan Document and shall only contain terms and conditions consistent with the Plan and reasonably acceptable to each of the Proponents.  Without limiting the generality of the foregoing, the Litigation Trust Declaration shall require that all Litigation Trust Property, including Net Litigation Proceeds, be distributed subject to the following waterfall:

(A)　　　First, to satisfy in full any outstanding expenses arising from the administration of the Litigation Trust;

(B)　　　Second, ratably, to the holders of Class A Litigation Trust Beneficial Interests until such holders have received, in the aggregate, an amount equal to the Allowed amount of all Unsecured Claims;

(C)　　　Third, ratably, to the holders of Class B Litigation Trust Beneficial Interests until such holders have received, in the aggregate, an amount equal to Allowed amount of Subordinated Claims; and

(D)　　　Fourth, ratably, to the holders of Class C Litigation Trust Beneficial Interests.

(ii)　　　The Litigation Trust shall be administered by the Litigation Trustee, which shall be identified prior to the commencement of the Confirmation Hearing.  The appointment of the initial Litigation Trustee and the terms of its compensation shall be subject to the approval of the Bankruptcy Court.

(iii)　　　During the period from the Confirmation Date to the Effective Date, the Debtor shall reimburse the Litigation Trustee for the actual and necessary out-of-pocket expenses incurred by it in preparing to assume its responsibilities under the Litigation Trust Declaration in an aggregate amount not to exceed $50,000.

(iv)　　　On the Effective Date, the Debtor shall transfer the Transferred Causes of Action to the Litigation Trust.  Such transfers shall be free and clear of Liens, Claims and other encumbrances and shall be administered for the benefit of the holders

H-1049241_8

of Unsecured Claims, Subordinated Claims and Limited Partnership Interests on the terms and conditions set forth in the Plan and the Litigation Trust Declaration.

(b)       Purpose of the Litigation Trust.  The Litigation Trust shall be established for the primary purpose of liquidating its assets in accordance with Treas. Reg. § 301.7701-4(d) with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust. Accordingly, the Litigation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the non-Cash Litigation Trust Property, including the Transferred Causes of Action, make timely distributions to the holders of Litigation Trust Beneficial Interests, and not unduly prolong the duration of the Litigation Trust.  The Litigation Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Litigation Trust Declaration.  The Litigation Trust is intended to qualify as a "grantor trust" for federal income tax purposes with the holders of Litigation Trust Interests treated as grantors and owners of the Litigation Trust.  As soon as practicable after the Effective Date, the Litigation Trustee (to the extent that the Litigation Trustee deems it necessary or appropriate in his or her sole discretion) shall value the assets of the Litigation Trust based on the good faith determination of the Litigation Trustee.  The valuation shall be used consistently by all parties for all federal income tax purposes.  The Bankruptcy Court shall resolve any dispute regarding such valuation.

(c)       Powers of the Litigation Trustee.  The Litigation Trustee shall have the power to administer the assets of the Litigation Trust in a manner consistent with the Litigation Trust Declaration and the Litigation Trustee shall be the Estate representative designated to prosecute any and all Transferred Causes of Actions.  Without limiting the generality of the foregoing, the Litigation Trustee shall (i) hold and administer, the assets of the Litigation Trust; (ii) have the sole power and authority to evaluate and determine strategy with respect to the Transferred Causes of Action and to litigate, settle, transfer, release or abandon any such Transferred Causes of Action on behalf of the Litigation Trust; (iii) have authority to pay all out of pocket expenses incurred in connection with the prosecution of the Transferred Causes of Action from assets of the Litigation Trust; (iv) have the power and authority to retain, as an expense of the Litigation Trust, such attorneys, advisors, other professionals and employees as may be appropriate to perform the duties required of the Litigation Trustee hereunder or in the Litigation Trust Declaration; (vi) make distributions as provided in the Litigation Trust Declaration and this Plan; and (vii) provide periodic reports and updates regarding the status of the administration of the Litigation Trust.  The Litigation Trustee shall be deemed a Disbursing Agent under the Plan when making distributions to holders of Litigation Trust Interests pursuant to the Litigation Trust Declaration.

(d)       Termination of Litigation Trust.  The Litigation Trust will terminate as soon as practicable, but not later than the seventh (7th) anniversary of the Effective Date; provided, however, that, on or prior to the seventh (7th) anniversary of the Effective Date (or such later date as may be permitted by order of the Bankruptcy Court as described in this Subsection 7.5(d)), the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Litigation Trust for a finite period, if such an extension is necessary to liquidate the assets of the Litigation Trust or for other good cause.  Multiple extensions of the termination of the Litigation Trust may be obtained so long as Bankruptcy Court approval is obtained prior to the expiration

of each extended term and the Litigation Trustee receives an opinion of counsel or a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Litigation Trust as a grantor trust for federal income tax purposes.

(e)      Certain Obligations of the Debtor.  The Reorganized Debtor shall cooperate in a commercially reasonable manner and in good faith with the Litigation Trustee to assure that the Litigation Trust has full and complete access to the Debtor's books and records in connection with its duty to prosecute the Transferred Causes of Action.  Without limiting the generality of the foregoing, the Reorganized Debtor shall (i) preserve all records and documents (including any electronic records and documents) related to the Transferred Causes of Action until the fifth (5th) anniversary of the Effective Date, or if actions related to the Transferred Causes of Action remain pending as of such date, until the Litigation Trustee notifies the Reorganized Debtor that such records are no longer required to be preserved; and (ii) provide the Litigation Trustee with reasonable access to review and copy such records and documents.

(f)      Certain Exculpations.  The Litigation Trustee, together with its agents and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and other parties in interest, from any and all Causes of Action, arising out of the discharge of the powers and duties conferred upon the Litigation Trustee by the Litigation Trust Declaration, the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Litigation Trustee's gross negligence or willful misconduct.

## 7.6   **Corporate Action.**

The entry of the Confirmation Order shall constitute authorization for the Debtor and the General Partner to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule or regulation, including, without limitation, any action required by the directors of the General Partner.  On the Effective Date, the officers of the Debtor and the directors of the General Partner are authorized and directed to do all things and to execute and deliver all agreements, documents, instruments, notices and certificates as are contemplated by the Plan, including, without limitation, all certificates or any other documents necessary to effectuate the conversion of the Debtor to a limited liability company, and to take all necessary action required in connection therewith, in the name of and on behalf of the Debtor.

**7.7**     **Valuation of Comcast Secured Claim**.

The Plan shall constitute a motion pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012 to determine the value of Comcast Lender's interest in the Estate's interest in the Comcast Lender Collateral. Prior to the Confirmation Hearing, the Proponents shall submit a proposed valuation of the Comcast Lender Collateral (the "Proponent Valuation") to the Bankruptcy Court.  The Bankruptcy Court shall consider the Proponent Valuation and all other appropriate evidence relating to value at the Confirmation Hearing and shall fix the value of the Comcast Lender Collateral in connection with the Confirmation Hearing.

Nothing in this Section 7.7 or otherwise shall prevent the Litigation Trust from objecting to the Comcast Lender Secured Claim (including any Liens related thereto) on or after the Effective Date, or from seeking to subordinate such Claim (or any related Liens) in connection with any subsequent litigation that may be brought by the Litigation Trust against Comcast Lender or any other Comcast Entity; provided, however, that if the Comcast Lender Secured Claim is not paid on the Effective Date on the grounds that it is a Contested Claim, the Astros Entities and Rockets Entities shall deposit Cash in an amount equal to the value of the Comcast Lender Collateral into an escrow account at a financial institution mutually agreeable to the Comcast Lender, the Astros Entities and the Rockets Entities.  Such parties shall enter into an escrow agreement containing commercially reasonable terms, which shall provide for (a) the immediate release of such Cash to Comcast Lender if and when the Comcast Lender Secured Claim becomes Allowed by a Final Order and (b) the release of such Cash to the Astros Entities and the Rockets Entities if the Comcast Lender Secured Claim is Disallowed or if the Lien of the Comcast Lender is avoided or preserved for the benefit of the Debtor or the Estate, in each case by a Final Order.

**7.8**     **Re-vesting of Assets.**

Upon the occurrence of the Effective Date, except as otherwise expressly provided in the Plan, title to all of the Assets of the Debtor shall vest in the Reorganized Debtor free and clear of all Liens, Claims, interests, security interests and other encumbrances and without further order of the Bankruptcy Court.  On and after the occurrence of the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of its Assets free of any restrictions of the Bankruptcy Code.

**7.9**     **Management and Officers.**

On the Effective Date, the current board of directors of the General Partner shall be dissolved and each director shall be released from any further duties to oversee, manage or operate the Debtor; provided, however, that nothing in this Section 7.9 shall release any Transferred Causes of Action, all of which shall be and are expressly preserved.  Subject to applicable law, from and after the Effective Date, the officers of the Reorganized Debtor shall be selected and appointed, in accordance with, and pursuant to, the provisions of applicable law and the Reorganized Debtor Company Agreement.  Nothing in this Plan shall constitute an assumption by the Debtor of any Claims or obligations to its employees.

**7.10    Transferred Causes of Action.**

Nothing in the Plan or otherwise shall impair, modify, impede, compromise or limit the ability of the Litigation Trust to investigate and prosecute the Transferred Causes of Action and the Transferred Causes of Action are expressly preserved notwithstanding the occurrence of the Effective Date.  **No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Transferred Cause of Action against them as any indication that the Litigation Trust will not pursue any and all available Transferred Causes of Action against them.  The Litigation Trust expressly reserves all rights to prosecute any and all Transferred Causes of Action against any Person at any time and for any reason.  Unless a Transferred Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Litigation Trust expressly reserves such Transferred Cause of Action for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Transferred Cause of Action upon or after the confirmation or consummation of the Plan.**

**7.11    Other Causes of Action.**

<u>Except</u> for the Transferred Causes of Action and as otherwise set forth in the Plan, all Causes of Action of the Debtor and its Estate shall, upon the occurrence of the Effective Date, be vested in the Reorganized Debtor.  <u>Except</u> as otherwise provided in the Plan, the rights of the Debtor to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.

**No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Reorganized Debtor will not pursue any and all available Causes of Action against them.  The Reorganized Debtor expressly reserves all rights to prosecute any and all Causes of Action (other than the Transferred Causes of Action) against any Person, <u>except</u> as otherwise provided in the Plan.  Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Debtor expressly reserves all Causes of Action (other than the Transferred Causes of Action), for later adjudication, and, therefore, no preclusion doctrine, <u>including</u> without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to such Causes of Action upon or after the confirmation or consummation of the Plan.**

**7.12    Sources of Cash for Plan Distributions.**

All Cash necessary for the Disbursing Agent to make Plan Distributions in respect of Allowed Administrative Claims, Allowed Cure Claims, Allowed Priority Claims, Allowed Tax Claims, Allowed Other Secured Claims, the Allowed Comcast Lender Secured Claim, and Allowed Trade Claims shall be obtained from (a) the Cash on hand with the Debtor at 12:00 midnight (Central Time) on the Effective Date and (b) the Debtor's accounts receivable accrued for the period up through 11:59 p.m. (Central Time) on the day prior to the Effective Date, which

H-1049241_8

shall be transferred by the Reorganized Debtor to the Disbursing Agent. If such Cash is insufficient to pay such Claims as set forth herein, additional Cash shall be contributed to the Disbursing Agent by the Astros Entities and the Rockets Entities for the sole purpose of paying such Claims. The Astros Entities and the Rockets Entities shall contribute Cash to the Disbursing Agent as set forth in the preceding sentence ratably based on their respective shares of the aggregate amount of media rights fees to be paid by the Reorganized Debtor under the New Media Rights Agreements. All Cash necessary for the Litigation Trustee to make payments and Plan Distributions in its capacity as Disbursing Agent to holders of Allowed Unsecured Claims, Allowed Subordinated Claims, and Allowed Limited Partnership Interests shall be obtained from the assets of the Litigation Trust in accordance with the terms of the Litigation Trust Declaration. All liabilities and expenses accrued for the period commencing 12:00 midnight (Central Time) on the Effective Date and thereafter shall be the obligations of the Reorganized Debtor. The Reorganized Debtor, AT&T and DTV shall not be liable for any Claims, Limited Partnership Interests or any other liability, obligation, claim, interest, or expense incurred by the Debtor and accrued for the period up through 11:59 p.m. (Central Time) on the day prior to the Effective Date.

**7.13    Liquidation of the General Partner.**

On the Effective Date or as soon as reasonably practicable thereafter (but in no event later than 30 days after the Effective Date), the General Partner shall be dissolved, liquidated and cancelled and a Certificate of Cancellation shall be filed with the Secretary of State of the State of Delaware.

**7.14    Comcast Benefit Plans.**

Effective as of immediately prior to the Effective Date, (a) HRSN shall cease to be a participating employer in any employee plan sponsored or maintained by the Comcast Entities or any of their Affiliates and (b) each employee who is an active participant in or is eligible to participate in an employee plan sponsored or maintained by the Comcast Entities or their Affiliates shall, as applicable, cease to be an active participant in or eligible to participate in such benefit plan.

**ARTICLE VIII**

**APPOINTMENT OF THE DISBURSING AGENT**

Upon the occurrence of the Effective Date, (a) [_____] shall be appointed to serve as the Disbursing Agent with respect to all Administrative Claims, Tax Claims, Priority Claims, the Comcast Lender Secured Claim, Other Secured Claims and Trade Claims; and (b) the Litigation Trustee shall be appointed to serve as the Disbursing Agent with respect to all other Claims and the Limited Partnership Interests. Each of [_____] and the Litigation Trustee, in its respective capacity a Disbursing Agent, shall have all powers, rights, duties and protections afforded the Disbursing Agent under the Plan.

**8.1    Powers and Duties of the Disbursing Agent.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall be

H-1049241_8

empowered and directed to (a) take all steps and execute all instruments and documents necessary to make Plan Distributions to holders of Allowed Claims; (b) comply with the Plan and the obligations thereunder; (c) employ, retain, or replace professionals to represent it with respect to its responsibilities; (d) object to Claims as specified in the Plan, and prosecute such objections; (e) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim as provided in the Plan; (f) make annual and other periodic reports regarding the status of distributions under the Plan to the holders of Allowed Claims that are outstanding at such time, with such reports to be made available upon request to the holder of any Contested Claim; and (g) exercise such other powers as may be vested in the Disbursing Agent pursuant to the Plan, the Plan Documents or order of the Bankruptcy Court.

**8.2     Plan Distributions.**

Pursuant to the terms and provisions of the Plan, the Disbursing Agent shall make the required Plan Distributions specified under the Plan on the relevant Plan Distribution Date therefor.

**8.3     Exculpation of Disbursing Agent.**

**Except** as otherwise provided in this Section 8.3, the Disbursing Agent, together with its officers, directors, employees, agents, and representatives, are exculpated pursuant to the Plan by all Persons, holders of Claims and all other parties in interest, from any and all Causes of Action arising out of the discharge of the powers and duties conferred upon the Disbursing Agent (and each of its respective paying agents), by the Plan, any Final Order of the Bankruptcy Court entered pursuant to or in the furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the Disbursing Agent's willful misconduct or gross negligence.  No holder of a Claim or representative thereof, shall have or pursue any Cause of Action (a) against the Disbursing Agent or its respective officers, directors, employees, agents, and representatives for making Plan Distributions in accordance with the Plan; or (b) against any holder of a Claim for receiving or retaining Plan Distributions as provided for by the Plan.  Nothing contained in this Section 8.3 shall preclude or impair any holder of an Allowed Claim from bringing an action in the Bankruptcy Court against the Disbursing Agent to compel the making of Plan Distributions contemplated by the Plan on account of such Claim.**

**ARTICLE IX**

**PLAN DISTRIBUTION PROVISIONS**

**9.1     Plan Distributions.**

The Disbursing Agent shall make all Plan Distributions in accordance with the terms of the Plan.  In the event a Plan Distribution shall be payable on a day other than a Business Day, such Plan Distribution shall instead be paid on the immediately succeeding Business Day, but shall be deemed to have been made on the date otherwise due.  For federal income tax purposes, except to the extent a Plan Distribution is made in connection with reinstatement of an obligation pursuant to section 1124 of the Bankruptcy Code, a Plan Distribution will be allocated first to the

principal amount of a Claim and then, to the extent the Plan Distribution exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

**9.2     Timing of Plan Distributions.**

Each Plan Distribution shall be made on the relevant Plan Distribution Date therefor and shall be deemed to have been timely made if made on such date or within ten (10) days thereafter.

**9.3     Address for Delivery of Plan Distributions/Unclaimed Plan Distributions.**

Subject to Bankruptcy Rule 9010, any Plan Distribution or delivery to a holder of an Allowed Claim shall be made at the address of such holder as set forth (a) in the Schedules; (b) on the proof of Claim filed by such holder; (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e); and (d) in any notice served by such holder giving details of a change of address.  If any Plan Distribution is returned to the Disbursing Agent as undeliverable, no Plan Distributions shall be made to such holder unless the Disbursing Agent is notified of such holder's then current address within ninety (90) days after such Plan Distribution was returned.  After such date, if such notice was not provided, a holder shall have forfeited its right to such Plan Distribution, and the undeliverable Plan Distributions shall be returned to the Debtor.

**9.4     De Minimis Plan Distributions.**

No Plan Distribution of less than twenty-five dollars ($25.00) shall be made by the Disbursing Agent to the holder of any Claim unless a request therefor is made in writing to the Disbursing Agent within ninety (90) days of the Effective Date.  Each Plan Distribution of less than twenty-five dollars ($25.00) as to which no request is made as provided in this Section 9.4 shall automatically revert to the Disbursing Agent on the ninety-first (91st) day after the Effective Date.

**9.5     Time Bar to Cash Payments.**

Checks issued in respect of Allowed Claims shall be null and void if not negotiated within one hundred and eighty (180) days after the date of issuance thereof.  Requests for reissuance of any voided check shall be made directly to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.  Any claim in respect of such voided check shall be made within thirty days (30) days after the date upon which such check was deemed void.  If no request is made as provided in the preceding sentence, any claims in respect of such voided check shall be discharged and forever barred and such unclaimed Plan Distribution shall revert to the Disbursing Agent.

**9.6     Manner of Payment under the Plan.**

Unless the Person receiving a Plan Distribution agrees otherwise, any Plan Distribution to be made in Cash under the Plan shall be made, at the election of the Disbursing Agent, by check drawn on a domestic bank or by wire transfer from a domestic bank.  Cash payments to foreign

creditors may, in addition to the foregoing, be made at the option of the Disbursing Agent in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**9.7    Fractional Plan Distributions.**

Notwithstanding anything to the contrary contained herein, no Plan Distributions of fractions of dollars will be made.  Fractions of dollars shall be rounded to the nearest whole unit (with any amount equal to or less than one-half dollar to be rounded down).

**9.8    Surrender and Cancellation of Instruments.**

As a condition to receiving any Plan Distribution, on or before the Plan Distribution Date, the holder of an Allowed Claim evidenced by a certificate, instrument or note other than any such certificate, instrument or note that is being reinstated or being left unimpaired under the Plan, shall (a) surrender such certificate, instrument or note representing such Claim, except to the extent assumed by the Debtor; and (b) execute and deliver such other documents as may be necessary to effectuate the Plan.  Such certificate, instrument or note shall thereafter be cancelled and extinguished.  The Disbursing Agent shall have the right to withhold any Plan Distribution to be made to or on behalf of any holder of such Claims unless and until (1) such certificates, instruments or notes are surrendered; or (2) any relevant holder provides to the Disbursing Agent an affidavit of loss or such other documents as may be required by the Disbursing Agent together with an appropriate indemnity in the customary form.  Any such holder who fails to surrender such certificates, instruments or notes or otherwise fails to deliver an affidavit of loss and indemnity prior to the second anniversary of the Effective Date, shall be deemed to have forfeited its Claims and shall not participate in any Plan Distribution.  All property in respect of such forfeited Claims shall revert to the Reorganized Debtor.

**ARTICLE X**

**PROCEDURES FOR RESOLVING
AND TREATING CONTESTED CLAIMS**

**10.1    Objection Deadline.**

The Disbursing Agent shall file objections to Claims, if any, with the Bankruptcy Court as soon as practicable, but not later than (a) the date that is one hundred and eighty (180) days after the Effective Date; or (b) such later date as may be established by order of the Bankruptcy Court upon motion of the Disbursing Agent without notice or a hearing.  The Disbursing Agent shall serve any objection to a Claim upon the holder of the Claim to which the Disbursing Agent objects.

**10.2    Prosecution of Contested Claims.**

The Disbursing Agent may object to the allowance of Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 10.3 of the Plan.

**10.3**   **Claims Settlement.**

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Disbursing Agent shall have authority to settle or compromise all Claims and Causes of Action without further review or approval of the Bankruptcy Court.

**10.4**   **Entitlement to Plan Distributions upon Allowance.**

Notwithstanding any other provision of the Plan, no Plan Distribution shall be made with respect to any Claim to the extent it is a Contested Claim, unless and until such Contested Claim becomes an Allowed Claim.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when) the holder of such Allowed Claim shall thereupon become entitled to receive the Plan Distributions in respect of such Claim, the same as though such Claim had been an Allowed Claim on the Effective Date.

## ARTICLE XI

## CONDITIONS PRECEDENT TO
## CONFIRMATION OF THE PLAN AND
## THE OCCURRENCE OF THE EFFECTIVE DATE

**11.1**   **Conditions Precedent to Confirmation.**

The following are conditions precedent to confirmation of the Plan:

(a)      The clerk of the Bankruptcy Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (ii) authorizing the solicitation of votes with respect to the Plan; (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan; (iv) confirming and giving effect to the terms and provisions of the Plan; (v) determining that all applicable tests, standards and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan; (vii) approving the Plan Documents; and (viii) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to, the transactions and transfer of Assets contemplated by the Plan and the Plan Documents; and

(b)      The Confirmation Order, the Plan Documents and the Plan are each in a form satisfactory to the Proponents, AT&T and DTV.

**11.2**   **Conditions Precedent to the Effective Date.**

The following are conditions precedent to the Effective Date:

(a)      The Confirmation Order shall have been entered by the clerk of the Bankruptcy Court, and the Confirmation Order remains in full force and effect and not subject to any stay or injunction;

(b)     All necessary consents, authorizations and approvals shall have been given for the transfers of property and the payments provided for or contemplated by the Plan, including, without limitation, satisfaction or waiver of all conditions to the obligations of the Debtor under the Plan and the Plan Documents;

(c)     The Comcast Lender Secured Claim shall be valued by the Bankruptcy Court in an amount consistent with the Proponent Valuation, as determined by the Astros Entities and Rockets Entities in their absolute discretion;

(d)     The Plan Documents shall be executed by the relevant parties thereto;

(e)     The Litigation Trust Declaration shall have become effective and all conditions to the effectiveness thereof shall have been satisfied or waived;

(f)     The Investment Agreement shall have become effective and all conditions to closing thereof shall have been satisfied or waived;

(g)     AT&T and DTV shall have provided written notice to the Debtor, the Rocket Entities and the Astros Entities that AT&T and DTV have determined in good faith, (i) that the Debtor is ready to be re-launched, and (ii) that all the new/third-party operational, transition and/or replacement services that are needed are in place, provided, however, that, unless previously satisfied, such condition in this Section 11.2(f) shall be deemed satisfied upon the expiration of thirty (30) days after the Confirmation Date; and

(h)     The Disbursing Agent shall have sufficient funds or the ability to obtain sufficient funds to make all the payments required to be made under the Plan.

**11.3     <u>Waiver of Conditions</u>.**

The Proponents, with AT&T and DTV's consent, may, collectively, waive any one or more of the conditions set forth in Sections 11.1 or 11.2 in a writing executed by each of them without notice or order of the Bankruptcy Court and without notice to any parties in interest.

**11.4     <u>Effect of Non-Occurrence of the Effective Date</u>.**

If the Effective Date shall not occur, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims against the Debtor; (b) prejudice in any manner the rights of the Proponents, including, without limitation, any right to seek a further extension of the exclusivity periods under section 1121(d) of the Bankruptcy Code; or (c) constitute an admission, acknowledgement, offer or undertaking by the Proponents.

## ARTICLE XII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**12.1    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

(a)    On the Effective Date, all executory contracts and unexpired leases of the Debtor shall be treated pursuant to the provisions of section 365 of the Bankruptcy Code, as follows: (i) the Comcast Affiliation Agreement shall be assumed; (ii) the Comcast Services Agreement shall be treated as set forth in Section 7.3 herein; (iii) the Astros Media Rights Agreement, the Rockets Media Rights Agreement, and all other executory contracts or unexpired leases with the Comcast Entities shall be rejected; (iv) each contract and lease listed in the Schedule of Rejected Executory Contracts and Unexpired Leases, which schedule shall be in form and substance satisfactory to AT&T and DTV, shall be rejected; (v) each contract and lease listed in the Schedule of Assumed Executory Contracts and Unexpired Leases, which schedule shall be in form and substance satisfactory to AT&T and DTV, shall be assumed.  The Debtor shall file the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases, each of which shall be in form and substance satisfactory to AT&T and DTV, nine (9) days prior to the Voting Deadline.  The Debtor shall use commercially reasonable efforts to identify all executory contracts and unexpired leases subject to rejection in the Schedule of Rejected Executory Contracts and Unexpired Leases.  If an executory contract or unexpired lease is omitted from the Schedule of Rejected Executory Contracts and Unexpired Leases and is not included in the Schedule of Assumed Executory Contracts and Unexpired Leases, such executory contract or unexpired lease shall, nonetheless be deemed rejected pursuant to the terms of this Article XII, except for any executory contract or unexpired lease that (i) has previously been assumed or rejected pursuant to order of the Bankruptcy Court, (ii) is the subject of a separate motion to assume or reject filed by Debtors under section 365 of the Bankruptcy Code before the Confirmation Date, or (iii) is the subject of a dispute over the amount or manner of cure pursuant to Section 12.2 hereof and for which the Debtor makes, with the consent of AT&T and DTV, a motion to reject such contract or lease based upon the existence of such dispute filed at any time.

(b)    Any non-Debtor counterparty to an agreement being assumed hereunder that disputes (i) the amount of any cure payments; (ii) the Reorganized Debtor's ability to provide adequate assurance of future performance; or (iii) any other matter pertaining to the assumption or assignment of such agreement must file with the Bankruptcy Court, and serve upon the Debtor, a written objection (an "Assumption Objection"), which objection shall set forth the basis for the dispute by no later than two (2) Business Days prior to the Confirmation Hearing. If a non-Debtor counterparty fails to file and serve an Assumption Objection, the non-Debtor counterparty shall be deemed to have waived any and all objections to the assumption of the relevant agreement as proposed by the Debtor, including the lack of any cure obligations.

(c)    Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of the assumption of executory contracts and unexpired leases as set forth in Section 12.1(a) pursuant to sections 365(a) and (b) of the Bankruptcy Code without further order of the Bankruptcy Court.

(d)      The Plan shall constitute a motion to assume or reject such executory contracts and unexpired leases set forth in 12.1(a), and the Debtor shall have no liability thereunder except as is specifically provided in the Plan.  The Debtor reserves the right to amend, with the consent of AT&T and DTV, the Schedule of Rejected Executory Contracts and Unexpired Leases and the Schedule of Assumed Executory Contracts and Unexpired Leases on or prior to the Confirmation Date to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) and unexpired lease(s) shall be deemed to be, respectively, assumed or rejected by the Debtor pursuant to this Article XII.  The Debtor shall provide notice of any amendments to the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases to the parties to the executory contracts or unexpired lease affected thereby.  The listing of a document on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases shall not constitute an admission by the Debtor that such document is an executory contract or that the Debtor has any liability thereunder.  Entry of the Confirmation Order by the clerk of the Bankruptcy Court shall constitute approval of the assumptions or rejections under this Section 12.1 pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection or assumption is in the best interests of the Debtor and its Estate.

(e)      Inclusion of a contract, lease or other agreement on the Schedule of Rejected Executory Contracts and Unexpired Leases shall constitute adequate and sufficient notice that (i) any Claims arising thereunder or related thereto shall be treated as Unsecured Claims under the Plan; and (ii) the Debtor is no longer bound by, or otherwise obligated to perform, any such obligations, transactions, or undertakings relating thereto or arising thereunder.

**12.2    Cure Claims.**

Any Cure Claims under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code: (a) by payment of the cure amount listed on the Schedule of Assumed Executory Contracts and Unexpired Leases in Cash on the Effective Date by the Disbursing Agent; or (b) on such other terms as agreed to by the Disbursing Agent and the non-Debtor counterparty to such executory contract or unexpired lease.  In the event a non-Debtor counterparty files an Assumption Objection, the cure payments required by section 365(b)(1) of the Bankruptcy Code to such non-Debtor counterparty shall be made following the entry of a Final Order resolving the dispute and approving assumption or assignment, as applicable.

**12.3    Claims Arising from Rejection, Expiration or Termination.**

Claims created by the rejection of executory contracts and unexpired leases or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date shall be Unsecured Claims and must be filed with the Bankruptcy Court and served on the Debtor or, if after the Effective Date, the Disbursing Agent: (a) in the case of an executory contract or unexpired lease rejected by the Debtor prior to the Confirmation Date, in accordance with the order rejecting such executory contract or unexpired lease; or (b) in the case of an executory contract or unexpired lease that (i) was terminated or expired by its terms prior to the

Confirmation Date; or (ii) is rejected pursuant to the Plan, no later than thirty (30) days after the Confirmation Date.  Any such Claims for which a proof of claim is not filed and served by the deadlines set forth herein will be forever barred from assertion and shall not be enforceable against the Debtor or its Estate.  Except as provided in the Plan or otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as Unsecured Claims under the Plan subject to objection by the Disbursing Agent.

## ARTICLE XIII

## <u>RETENTION OF JURISDICTION</u>

**13.1** **<u>Scope of Retention of Jurisdiction.</u>**

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code; or (b) arising in or related to the Chapter 11 Case or the Plan, <u>including</u>, without limitation, the following:

(i)  To hear and determine any and all motions or applications pending on the Confirmation Date or thereafter brought in accordance with Article XII hereof for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear and determine any and all Claims and any related disputes (<u>including</u>, without limitation, the exercise or enforcement of setoff or recoupment rights, or rights against any third party or the property of any third party resulting therefrom or from the expiration, termination or liquidation of any executory contract or unexpired lease);

(ii)  To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Disbursing Agent, the Litigation Trustee or the Debtor, as applicable, after the Effective Date;

(iii)  To hear and determine any objections to the allowance of Claims, whether filed, asserted, or made before or after the Effective Date, <u>including</u>, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow, disallow or estimate any Contested Claim in whole or in part;

(iv)  To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

(v)  To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, <u>including</u>, without limitation, the Confirmation Order;

(vi)  To hear and determine all Fee Applications and applications for allowances of compensation and reimbursement of any other fees and expenses authorized to be paid or reimbursed under the Plan or the Bankruptcy Code;

(vii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Chapter 11 Case, the Plan, the Plan Documents or their interpretation, implementation, enforcement, or consummation, including any suits related the conduct of any of the Proponents during or in respect of the Chapter 11 Case;

(viii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Confirmation Order (and all exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

(ix)    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or Cause of Action by, on behalf of, or against the Estate;

(x)    To determine such other matters that may be set forth in the Plan, or the Confirmation Order, or that may arise in connection with the Plan, or the Confirmation Order;

(xi)    To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtor, the Litigation Trustee or the Disbursing Agent may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(xii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with any setoff and/or recoupment rights of the Debtor or any Person under the Plan;

(xiii)    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with Causes of Action of the Debtor (including Avoidance Actions and Transferred Causes of Action) commenced by the Disbursing Agent, the Litigation Trustee, the Debtor or any third parties, as applicable, before or after the Effective Date;

(xiv)    To hear and determine all controversies, litigation, and disputes between Comcast and the Astros Entities, the Rockets Entities, DTV, the DTV Member, AT&T, and the AT&T Member, that may relate to, impact upon, or arise in connection with the Chapter 11 Case;

(xv)    To enter an order or final decree closing the Chapter 11 Case;

(xvi)    To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order; and

(xvii)    To hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code.

H-1049241_8

**13.2**     **Failure of the Bankruptcy Court to Exercise Jurisdiction.**

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, including the matters set forth in Section 13.1 of the Plan, the provisions of this Article XIII shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

## ARTICLE XIV

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**14.1**     **Satisfaction of Claims.**

The rights afforded in the Plan and the treatment of all Claims herein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor, the Estate or any of its Assets.  Except as otherwise provided herein, on the Effective Date, all Claims against the Debtor and its Estate shall be satisfied, discharged and released in full.  Except as otherwise provided herein, all Persons shall be precluded and forever barred from asserting against the Reorganized Debtor, the Debtor, the Estate and their Assets any Claims or Causes of Action arising from any event, occurrence, condition, thing, act, omission, transaction, or other activity of any kind or nature that occurred or came into existence prior to the Effective Date, whether or not the facts of or legal bases therefore were known or existed prior to the Effective Date.

**14.2**     **Release of Liens.**

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and their successors and assigns.

**14.3**     **Exculpation.**

**None of the Reorganized Debtor, Debtor, Astros Entities, Rockets Entities, AT&T, the AT&T Member, DTV, the DTV Member or any of their respective affiliates, current and former officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals will have or incur any liability to any Person for any act or omission taking place on or prior to the Effective Date in connection with, or arising out of, the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, the implementation or administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence as finally determined by the Bankruptcy Court, and, in all respects shall be entitled to rely upon the advice of counsel and all information**

provided by other exculpated persons herein without any duty to investigate the veracity or accuracy of such information with respect to their duties and responsibilities under the Plan; **provided** that the current and former directors of the General Partner appointed by Comcast Partner shall not be entitled to the exculpation provided in this Section 14.3 of the Plan.

**14.4**   **Discharge of Claims and Termination of Limited Partnership Interests.**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Limited Partnership Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Limited Partnership Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Limited Partnership Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Limited Partnership  Interests subject to the Effective Date occurring.

**14.5**   **Dismissal of Appeal.**

Effective as of the Effective Date, the Appeal will be deemed dismissed with prejudice without further action by any party.

**14.6**   **Debtor Release.**

As of the Effective Date, for good and valuable consideration, the Debtor and the General Partner shall and shall be deemed to release and forever waive and discharge all claims, demands, obligations, suits, judgments, damages, debts, rights, defenses, causes of action and liabilities, whether absolute, inchoate or contingent; whether determined or undetermined, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise arising or existing that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way

relating to the Debtor  or the General Partner (including any claims under the Debtor Constituent Documents), the Chapter 11 Case, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor, its Estate or the General Partner against (i) the Debtor (ii) the General Partner, (iii) the Rockets Entities; (iv) the Astros Entities, (v) AT&T, the AT&T Member and their Affiliates, (vi) DTV, the DTV Member and their Affiliates or (vii) current and former officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals of any of the foregoing in each case in their capacity as such; provided that the current and former directors of the General Partner shall not be entitled to the release provided in this Section 14.5 of the Plan.

**14.7**    **Release by Holders of Claims and Interests.**

As of the Effective Date, for good and valuable consideration, each Holder of a Claim against or an Interest in the Debtor that votes to accept the Plan shall and shall be deemed to release and forever waive and discharge all claims, demands, obligations, suits, judgments, damages, debts, rights, defenses, causes of action and liabilities, whether absolute, inchoate or contingent; whether determined or undetermined, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise arising or existing that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or the General Partner (including any claims under the Debtor Constituent Documents), the Chapter 11 Case, the Plan or the Disclosure Statement against (i) the Reorganized Debtor and Debtor, (ii) the General Partner, (iii) the Rockets Entities, (iv) the Astros Entities, (v) AT&T, the AT&T Member and their Affiliates, (vi) DTV, the DTV Member and their Affiliates or (vii) the current and former officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals of any of the foregoing in each case in their capacity as such; provided that the current and former directors of the General Partner shall not be entitled to the release provided in this Section 14.6 of the Plan.

**14.8**    **Injunctions.**

(a)    On the Effective Date and except as otherwise provided in the Plan, all Persons who have been, are, or may be holders of Claims against the Debtor or the General Partner shall be permanently enjoined from taking any of the following actions against or affecting the Reorganized Debtor, the Debtor, the Estate, the Assets, the Disbursing Agent or the General Partner, or any of their current or former respective members, directors, managers, officers, employees, agents, and professionals, successors and assigns or their respective assets and

property with respect to such Claims (other than actions brought to enforce any rights or obligations under the Plan):

(i)     **commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date, which must be withdrawn or dismissed with prejudice);**

(ii)    **enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order;**

(iii)   **creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance; and**

(iv)    **asserting any setoff, right of subrogation or recoupment of any kind; provided, that any defenses, offsets or counterclaims which the Debtor or the General Partner may have or assert in respect of the above referenced Claims are fully preserved in accordance with Section 15.11.**

## ARTICLE XV

## MISCELLANEOUS PROVISIONS

**15.1   Payment of Statutory Fees.**

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtor on or before the Effective Date.

**15.2   Notices.**

Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

If to the Debtor:

Houston Regional Sports Network, L.P.
1201 San Jacinto Street, Suite 200
Houston, TX 77002
Attn:  Tad Brown

With a copy to:

27

H-1049241_8

Haynes and Boone, LLP
1221 McKinney Street
Houston, TX 77010
Attn:  Charles Beckham, Esq.

If to the Rockets Entities:

Rocket Ball, Ltd.
The Toyota Center
1510 Polk Street
Houston, TX 77002
Attn:  Rafael Stone, Esq.

With a copy to:

White & Case, LLP
1155 Avenue of the Americas
New York, NY 10036
Attn:  Alan S. Gover, Esq.

If to the Astros Entities:

Houston Astros, LLC
Minute Maid Park
501 Crawford Street, Suite 400
Houston, TX 77001
Attn:  General Counsel

With a copy to:

Kirkland & Ellis, LLP
601 Lexington Avenue
New York, NY 10022
Attn:  Paul M. Basta, Esq. and David S. Meyer, Esq.

**15.3**     **Headings.**

The headings used in the Plan are inserted for convenience only, and neither constitutes a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

**15.4**     **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules), the laws of the State of Texas, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements,

H-1049241_8

documents, and instruments executed in connection with the Plan, <u>except</u> as otherwise expressly provided in such instruments, agreements or documents.

**15.5**    <u>**Expedited Determination**</u>**.**

The Disbursing Agent is hereby authorized to file a request for expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed with respect to the Debtor.

**15.6**    <u>**Exemption from Transfer Taxes**</u>**.**

Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, Lien, pledge or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**15.7**    <u>**Payment of Fees and Expenses**</u>**.**

Astros Entities, Rocket Entities, AT&T, and DTV shall each be responsible for their own fees and expenses incurred in connection with, or arising out of, the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, the implementation or administration of the Plan or the property to be distributed under the Plan.

**15.8**    <u>**Notice of Entry of Confirmation Order and Relevant Dates**</u>**.**

Promptly upon entry of the Confirmation Order, the Debtor shall publish as directed by the Bankruptcy Court and serve on all known parties in interest and holders of Claims, notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan, <u>including</u>, but not limited to, the deadline for filing notice of Administrative Claims, and the deadline for filing rejection damage Claims.

**15.9**    <u>**Interest and Attorneys' Fees**</u>**.**

Interest accrued after the Petition Date will accrue and be paid on Claims only to the extent specifically provided for in this Plan, the Confirmation Order or as otherwise required by the Bankruptcy Court or by applicable law.  No award or reimbursement of attorneys' fees or related expenses or disbursements shall be allowed on, or in connection with, any Claim, <u>except</u> as set forth in the Plan or as ordered by the Bankruptcy Court.

**15.10**   <u>**Modification of the Plan**</u>**.**

As provided in section 1127 of the Bankruptcy Code, modification of the Plan may be proposed in writing by the Proponents, with the consent of AT&T and DTV, at any time before confirmation, <u>provided</u> that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  The Proponents, with the consent of AT&T and DTV, may modify the Plan at any time after confirmation and before substantial consummation, <u>provided</u> that the Plan, as

H-1049241_8

modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and the circumstances warrant such modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted such Plan as modified if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.

**15.11**   **Setoff Rights.**

In the event that the Debtor has a Claim of any nature whatsoever against the holder of an Administrative Claim, Tax Claim, Priority Claim, Comcast Lender Secured Claim, Other Secured Claim, Unsecured Claim or Subordinated Claim, in each case against the Debtor accruing prior to the Effective Date, then the Disbursing Agent may, but is not required to, set off against the Claim (and any payments or other Plan Distributions to be made in respect of such Claim hereunder) against the Debtor's claim against such holder, subject to the provisions of sections 553, 556 and 560 of the Bankruptcy Code.  Neither the failure to set off nor the allowance of any Claim under the Plan shall constitute a waiver or release of any Claims that the Debtor may have against the holder of any Claim.  For avoidance of doubt, the Disburing Agent shall not have any such setoff rights with respect to holders of Trade Claims.

**15.12**   **Compliance with Tax Requirements.**

In connection with the Plan, the Debtor and the Disbursing Agent, as applicable, shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities and all Plan Distributions hereunder shall be subject to such withholding and reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Plan Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any government unit, including income, withholding and other tax obligations, on account of such Plan Distribution.  The Disbursing Agent has the right, but not the obligation, to not make a Plan Distribution until such holder has made arrangements satisfactory to the Disbursing Agent for payment of any such tax obligations.

**15.13**   **Binding Effect.**

The Plan shall be binding upon the Debtor, the holders of all Claims and all parties in interest and their respective successors and assigns.  To the extent any provision of the Disclosure Statement or any other solicitation document may be inconsistent with the terms of the Plan, the terms of the Plan shall be binding and conclusive.

**15.14**   **Severability.**

**IN THE EVENT THE BANKRUPTCY COURT DETERMINES THAT ANY PROVISION OF THE PLAN IS UNENFORCEABLE EITHER ON ITS FACE OR AS APPLIED TO ANY CLAIM OR TRANSACTION, THE DEBTOR MAY MODIFY THE PLAN IN ACCORDANCE WITH SECTION 15.10 SO THAT SUCH PROVISION SHALL NOT BE APPLICABLE TO THE HOLDER OF ANY SUCH CLAIM OR TRANSACTION.  SUCH A DETERMINATION OF UNENFORCEABILITY SHALL**

NOT (A) LIMIT OR AFFECT THE ENFORCEABILITY AND OPERATIVE EFFECT OF ANY OTHER PROVISION OF THE PLAN; OR (B) REQUIRE THE RESOLICITATION OF ANY ACCEPTANCE OR REJECTION OF THE PLAN.

**15.15   No Admissions.**

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST THE DEBTOR AND DEBTOR IN POSSESSION IN THIS CHAPTER 11 CASE.

[Signature Page to Follow]

H-1049241_8

Dated: September 4, 2014

Respectfully submitted,

HOUSTON REGIONAL SPORTS
NETWORK, L.P.

By: HOUSTON REGIONAL SPORTS
    NETWORK LLC, its general partner

By: _/s/ Tad Brown_____
    Name: _____
    Title: _____

ROCKET BALL, LTD.

By: _/s/ Tad Brown_____
    Name: _____
    Title: _____

HOUSTON ASTROS, LLC

By: _/s/ James R. Crane_____
    Name: _____
    Title: _____

[Signature Page for Plan of Reorganization]