IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br>HOUSTON REGIONAL SPORTS NETWORK, L.P.,<br><br>                Debtor. | Chapter 11<br><br>CASE NO. 13-35998 |

**COMCAST CLAIMANTS' EMERGENCY MOTION TO COMPEL
THE PROPOSED BUYERS TO REDESIGNATE DOCUMENTS
FROM "HIGHLY CONFIDENTIAL" TO "CONFIDENTIAL"**

**THE COURT WILL CONDUCT A HEARING IN THIS MATTER AT A TIME TO BE DETERMINED BY THE COURT IN THE U. S. COURTHOUSE, 515 RUSK AVENUE, HOUSTON, TEXAS 77002.**

**BLR 9013-1(i) NOTICE: EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**BLR 9013-1(b) NOTICE: THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING. REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

       Houston SportsNet Finance LLC, Comcast Sports Management Services, LLC, National Digital Television Center LLC d/b/a Comcast Media Center, NBCUniversal Media LLC, SportsChannel New England LLC, SportsChannel Pacific Associates, and Houston SportsNet Holdings LLC (collectively, the "Comcast Claimants") hereby move, pursuant to Paragraph 18

ActiveUS 134542163v.2

of the Stipulation and Order Governing the Production and/or Disclosure of Confidential Plan Documents and Discovery Materials and Authorizing the Filing of Certain Documents Under Seal, entered by the Court on August 19, 2014 (the "Protective Order" [Dkt. #492]), for an order compelling AT&T Teleholdings, Inc. (with its affiliates, "AT&T"), and DirecTV, LLC (with its affiliates, "DirecTV," and together with AT&T, the "Proposed Buyers") to redesignate the respective affiliation agreements to be entered into by AT&T and DirecTV with the proposed Reorganized Debtor, and other documents that contain or reflect the rates provided therein, from "Highly Confidential" to "Confidential." The "highly confidential" designation of all of this information prevents Comcast's attorneys from sharing this information with its client. But this information is critical to understanding the value of the Reorganized Debtor. Without being able to review this information, Comcast is unable to make informed judgments about litigation strategy, or otherwise to direct its counsel how to proceed. As one example, this information is critical to Comcast making an informed judgment about whether to make the 1111(b) election – which it must do (or not do) within the next two days. In support of this Motion, the Comcast Claimants respectfully state as follows:[1]

## PRELIMINARY STATEMENT

1. As the Court is aware, Comcast Lender's[2] deadline to make the election under section 1111(b) of the Bankruptcy Code is September 11, 2014. Pursuant to section 1129(b) of

---

[1] Capitalized terms are either defined in this Motion or shall have the meaning ascribed to them in the Second Amended Disclosure Statement Relating to the Amended Chapter 11 Plan dated September 4, 2014 in Respect of Houston Regional Sports Network, L.P. (the "Amended Disclosure Statement") [Dkt. # 529] (which incorporates by reference the definitions in and annexed to the Amended Chapter 11 Plan of Reorganization dated September 4, 2014 [Dkt. # 528]).

[2] For simplicity, the Comcast Claimant's and Comcast Lender may be collectively referred to herein as "Comcast."

2

ActiveUS 134542163v.2

the Bankruptcy Code, if Comcast makes the election, it will receive deferred cash payments in the full amount of its secured claim and will retain the lien securing its claim until it is paid in full. To determine whether it is in Comcast's business interests to make this election, Comcast must gain access to information relevant to the value of its collateral – a key driver of which is the value of the Reorganized Debtor.

2. Pursuant to the Protective Order, however, the affiliation agreements that AT&T and DirecTV intend to enter into with the Reorganized Debtor (the "Proposed Affiliation Agreements"), which will be a key source of revenue for the Reorganized Debtor, have been produced but designated "Highly Confidential" and, as a result, cannot be reviewed by Comcast's employees. The same is true of the various financial models that reveal the rates contained in those agreements. The determination as to whether the section 1111(b) election is in Comcast's best interests is a business decision that must be made by Comcast, not its outside advisors. Moreover, as Comcast prepares for a contested confirmation hearing, Comcast—not just its outside advisors—must be knowledgeable about the dispute, which, at base, concerns the value of the Reorganized Debtor and the Comcast Collateral. The terms of the Proposed Affiliation Agreements speak directly to these issues.

3. For these reasons the Proposed Affiliation Agreements should be redesignated as "Confidential" so that a limited number (fewer than ten) of Comcast employees can review the documents to determine their impact on and value to the Reorganized Debtor.

**BACKGROUND**

4. The Court is familiar with the history of the above-captioned bankruptcy, and the Comcast Claimants therefore will not recite in detail the background regarding this action prior to events immediately relevant to the current dispute.

**A.     Comcast's Deadline to Make Election Under section 1111(b)**

5. Pursuant to the Proposed Plan, the value of the Comcast Lender Secured Claim is to be determined by the Court, pursuant to 11 U.S.C. § 506(a), at the Confirmation Hearing beginning October 2, 2014.

6. On September 4, 2014, the Court held a hearing to consider a Motion for Entry of an Order (A) Approving the Disclosure Statement, (B) Scheduling a Hearing to Consider Confirmation of the Plan, (C) Establishing Voting, Objection and Other Confirmation Related Deadlines, and (D) Approving Forms of Ballots and Solicitation Procedures, filed by Houston Regional Sports Network, L.P., the above-captioned debtor and debtor-in-possession (the "Debtor"). Following the hearing, the Court entered an order granting the requested relief, with certain modifications (the "September 4 Order" [Dkt. # 526]).

7. Pursuant to the September 4 Order, Comcast must make (or fail to make) its election to have its secured claim treated under section 1111(b) of the Bankruptcy Code by no later than September 11, 2014, at 11:59 p.m.

**B.     The Instant Dispute and the Parties' Meet-and-Confer Efforts**

8. In response to the Comcast Claimants' discovery requests, the Proposed Buyers have produced to the Comcast Claimants' counsel copies of the Proposed Affiliation Agreements that the Proposed Buyers intend to enter into with the Reorganized Debtor.

9. Pursuant to the terms of the Protective Order, the Proposed Buyers designated the Proposed Affiliation Agreements, and all of the financial models and other information that

4

would reveal the rates reflected therein, as "Highly Confidential."[3] As a result, Comcast Claimants' counsel are prohibited from sharing the Proposed Affiliation Agreements with any Comcast employees. (Protective Order ¶ 15.)

10. On September 7, 2014, counsel for the Comcast Claimants sent an email to the Proposed Buyers' counsel, pursuant to Paragraph 18 of the Protective Order, objecting to the designation of the Proposed Affiliation Agreements as "Highly Confidential" and requesting that the documents be redesignated as "Confidential."[4] (*See* Exhibit A, Email from D. Seshens to William Greendyke, et al. (Sept. 7, 2014).) As explained in the email, redesignating the documents would permit Comcast's counsel to share the Proposed Affiliation Agreements with a small number of key business and in-house legal personnel at Comcast (*see* Protective Order ¶ 14(b)-(c)), which is essential for Comcast to make the necessary business decisions associated with Comcast's possible election under section 1111(b) of the Bankruptcy Code and with litigation strategy more generally. Among other things, the proposed terms for carriage by

---

[3] "Highly Confidential" Discovery Materials are defined in the Protective Order as "materials that are Confidential, as defined herein, and that also include competitively sensitive Confidential Discovery Materials of the Designating Party, the disclosure of which may result in competitive harm, including, but not limited to (i) any documents or information relating to or reflective of market strategies, including business planning, contract negotiations and terms, and research and development activities, (ii) any documents or information relating to or reflective of pricing, including underlying cost data, budgets, and any price-related terms of a party, and (iii) any documents or information relating to or reflective of customer information." (Protective Order ¶ 9.)

[4] "Confidential" Discovery Materials are defined in the Protective Order as "materials that contain (a) trade secret or other confidential research, development, or commercial information protected by Rule 9018 of the Federal Rules of Bankruptcy Procedure, (b) information subject by law or by contract to a legally protected right of privacy, (c) information which the Producing Party is legally obligated by law or contract to keep confidential, as reasonably determined by the Producing Party, or (d) information that the Producing Party would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence." (Protective Order ¶ 14.)

AT&T and DirecTV on a go-forward basis are critical to Comcast's efforts to complete a valuation analysis, including the value of any lien on the assets of the Reorganized Debtor in the event the section 1111(b) election is made.

11. On September 8, 2014, Comcast met and conferred with the Proposed Buyers via telephone. During the teleconference, Comcast further explained the necessity of being able to share the Proposed Affiliation Agreements with individuals at Comcast and offered to work with AT&T and DirecTV to ensure that the distribution remained limited. Indeed, Comcast believes that only ten of its more than one hundred thousand employees need to see the material at issue. In response, AT&T and DirecTV took the position that the Proposed Affiliation Agreements were not necessary for Comcast to determine whether to make the section 1111(b) election because neither AT&T nor DirecTV are paying claims under the terms of the Plan and the Proposed Plan requires that the Debtor's assets revest in the Reorganized Debtor free and clear.

12. With Comcast's deadline to decide whether to make the section 1111(b) election looming, the Comcast Claimants hereby move for an order requiring the Proposed Buyers to redesignate the Proposed Affiliation Agreements as "Confidential" so that the documents can be shared on a limited basis with the necessary business and in-house legal personnel at Comcast who are involved in the election decision, and otherwise participate in key litigation decisions related to the upcoming confirmation hearing. To be sure, the documents would still be afforded all of the protections afforded by a "Confidential" designation under the Protective Order. The Comcast Claimants certify that, as outlined above, they and the Proposed Buyers have conferred in good faith in an effort to resolve their disputes without seeking the Court's intervention.

## ARGUMENT

13. "It is 'well settled that there is no absolute privilege for trade secrets and similar confidential information.'" *M-I LLC v. Stelly*, 733 F.Supp.2d 759, 801 (S.D. Tex. 2010) (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043 (2d ed.1994)). Rather, the party seeking protection must establish that the information sought "is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm." *Id.* (citation and internal quotation marks omitted). If the party seeking protection makes the required showing, "the burden falls on the opposing party to 'establish that the information is sufficiently relevant and necessary' to its case to outweigh the harm that disclosure may cause.'" *Id.* at 801-02 (quoting 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2043 (2d ed.1994)). It is then within the "sound discretion of the trial court" to determine "whether the need outweighs the harm of disclosure." *Id.* at 802.

### A. Access to the Proposed Affiliation Agreements by Comcast Personnel is Essential for Comcast to Make an Informed Election under Section 1111(b)

14. As the Court is aware, Comcast is facing a deadline to make the election under section 1111(b) of the Bankruptcy Code and if it were to do so, the entire amount of the Comcast Secured Lender Claim would need to be treated as secured under the Proposed Plan. 11 U.S.C. § 1111(b). If Comcast makes the section 1111(b) election, it will be entitled to receive deferred cash payments in the full amount of its secured claim (not less than $100 million) with a present value equal to the value of the collateral securing the claim. Until payment in full of the Comcast Secured Lender Claim, Comcast would retain its existing lien on the assets securing its claim, even in the hands of the Reorganized Debtor. 11 U.S.C. § 1129(b)(2)(A)(i). Should Comcast make the 1111(b) election, the Proposed Plan will need to be amended to reflect this

statutorily-required treatment of the Comcast Lender Secured Claim.  For this reason, the Proposed Buyers are simply wrong in arguing that -- because the Proposed Plan does not require them to pay any claims and currently provides that the Debtor's assets revest in the Reorganized Debtor free and clear – the information Comcast seeks to have redesignated is irrelevant.

15. Whether Comcast determines that making the 1111(b) election is in its best interests is a business decision that must be made by *Comcast*, not its outside professionals or advisors.  And, to do so, Comcast must be able to determine how the election will affect its expected recovery under the Proposed Plan.  This is not possible without Comcast employees being able to review the terms of the AT&T Affiliation Agreement and the DirecTV Affiliation Agreement to determine their effect on the value of the Reorganized Debtor upon which Comcast's lien will attach.  It is beyond dispute that the terms of the New Affiliation Agreements will impact the value of the Reorganized Debtor.  The Debtor itself has recognized the importance of the Proposed Affiliation Agreements to the value of the Comcast collateral and the reorganized Network.  (*See* Amended Disclosure Statement at 37 ("As a result, the Existing Affiliation Agreements and the Debtor's other intangible assets can only be utilized, and their value realized, once the New Media Rights Agreements and the [Proposed] Affiliation Agreements are effective and the Reorganized Debtor is operating post-consummation of the Plan.").)  How can Comcast decide whether to pin its recovery to the value of the Reorganized Debtor without being able to thoroughly analyze that value?

16. Indeed, without being able to share this most basic factual information with it client, Comcast's outside counsel is effectively precluded from meeting its ethical obligations of ensuring that it's client is appropriately informed and involved in directing the course of the litigation.  For example, ABA Model Rule 1.4(a)(2) requires an attorney to "reasonably consult

with the client about the means by which the client's objectives are to be accomplished." Rule 1.4(b) requires the lawyer to "explain the matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." See also cmt. 5 ("The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation."). Comcast's counsel is effectively hamstrung from meeting these obligations by virtue of the "Highly Confidential" designation that blocks its client from access to the most critical facts at issue in this matter.

17. This case is headed toward a contested confirmation hearing on an expedited schedule. A key issue at the hearing will be the value of Comcast's collateral, which, according to the Amended Disclosure Statement, is inextricably tied to the value of the Reorganized Debtor and thus to terms of the Proposed Affiliation Agreements, which will provide a substantial majority of the Reorganized Debtor's revenue. Although Comcast's outside advisors have reviewed the Proposed Affiliation Agreements, Comcast itself has not. Comcast cannot litigate in the dark. In order to adequately protect its interests and prosecute the confirmability of the Proposed Plan, Comcast itself, not just its outside advisors, must understand the economics at issue, which includes the Reorganized Debtor's main source of income. To withhold these vital documents from Comcast entirely at this pivotal time in the case will disable Comcast from being able to adequately represent its interests.

**B.    Any Competitive Sensitivities on the Part of the Proposed Buyers Can Be Addressed By Limiting the Disclosure to a Need-to-Know Basis**

18. Comcast recognizes that whenever discovery requires commercially-sensitive documents to be exchanged between competitors in the same industry, there are competitive sensitivities. Nevertheless, there is no blanket immunity from disclosure on account of competitive sensitivities, as the need for disclosure may outweigh such concerns. *See M-I LLC*,

9

733 F.Supp.2d at 801-02.  Indeed, in connection with the Proposed Buyers' consideration of whether to invest in the Reorganized Debtor, certain DirecTV employees (and perhaps AT&T employees as well) were permitted access to the Comcast Cable Affiliation Agreement.  In doing so, the Proposed Buyers acknowledged the importance of affiliation agreements to the value of the enterprise.  The Proposed Buyers are not entitled to have it both ways: obtaining Comcast's confidential information when they desire it as part of due diligence, but depriving Comcast of similar information when Comcast needs it in order to protect its legal rights.  There is no conceivable reason that the Comcast Cable Affiliation Agreement and the Proposed Affiliation Agreements should be treated differently.

19. Comcast is prepared to limit the disclosure of the Proposed Affiliation Agreements to fewer than ten employees—and will agree not to disclose the documents to any other Comcast employee.  In this manner, the concerns of the Proposed Buyers can be addressed without significantly hindering Comcast's ability to adequately protect its interests.  *See Raytheon Co. v. Indigo Sys. Corp.*, 2008 U.S. Dist. LEXIS 70934 (E.D. Tex. Sept. 17, 2008) (granting certain of defendant's employees limited access to report that had previously been designated under protective order as "Confidential – Attorneys' Eyes Only" in view of defendants' need to respond adequately to the claims against them).  The Comcast Claimants submit that, under the present circumstances, this limitation is more than adequate to strike an appropriate balance between the need for greater disclosure than the Proposed Buyers' confidentiality designations presently allow and any alleged harms that the Proposed Buyers contend would result from such disclosure.

**CONCLUSION**

20. WHEREFORE, for the foregoing reasons, the Comcast Claimants respectfully request that the Court enter an order compelling the Proposed Buyers to redesignate the Proposed Affiliation Agreements from "Highly Confidential" to "Confidential."

Dated: September 9, 2014

Respectfully submitted,

*/s/ Vincent P. Slusher*

| | |
|---|---|
| Howard M. Shapiro | Vincent P. Slusher |
| Craig Goldblatt | Andrew Zollinger |
| Jonathan Paikin | DLA Piper LLP (US) |
| Wilmer Cutler Pickering | 1717 Main Street |
| Hale and Dorr LLP | Suite 4600 |
| 1875 Pennsylvania Avenue, N.W. | Dallas, TX 75201-4629 |
| Washington, D.C.  20006 | (214) 743-4500 |
| (202) 663-6000 | |
| George W. Shuster, Jr. | Arthur J. Burke |
| Wilmer Cutler Pickering | Timothy Graulich |
| Hale and Dorr LLP | Dana M. Seshens |
| 7 World Trade Center | Davis Polk & Wardwell LLP |
| 250 Greenwich Street | 450 Lexington Avenue |
| New York, NY 10007 | New York, NY 10017 |
| (212) 230-8800 | (212) 450-4000 |

*Counsel for the Comcast Claimants*