IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br>HOUSTON REGIONAL SPORTS NETWORK, L.P.,<br><br>　　　　　　　　　Debtor. | Chapter 11<br><br>CASE NO. 13-35998 |

COMCAST CLAIMANTS' STATEMENT PURSUANT
TO SECTION 502(c) OF THE BANKRUPTCY CODE
SETTING FORTH THE AMOUNT OF UNSECURED CLAIMS
HELD BY THE ASTROS AND THE ROCKETS FOR VOTING PURPOSES

In accordance with the terms of the Order (A) Approving the Disclosure Statement, (B) Scheduling a Hearing to Consider Confirmation of the Plan, (C) Establishing Voting, Objection and Other Confirmation Related Deadlines, and (D) Approving Forms of Ballots and Solicitation Procedures (the "Disclosure Statement Approval Order") [Dkt. No. #526], Houston SportsNet Finance LLC, Comcast Sports Management Services, LLC, National Digital Television Center LLC d/b/a Comcast Media Center, NBCUniversal Media LLC, SportsChannel New England LLC, SportsChannel Pacific Associates, and Houston SportsNet Holdings LLC (collectively, the "Comcast Claimants") submit this statement regarding the amount of unsecured claims held by the Astros Entities[1] and the Rockets Entities (collectively, the "Teams") for voting purposes only.

As the Comcast Claimants will set forth in further detail in their objection to confirmation, the classification and voting scheme that the Plan Proponents have devised

---

[1] Capitalized terms are either defined in this Statement or shall have the meaning ascribed to them in the Second Amended Disclosure Statement Relating to the Amended Chapter 11 Plan dated September 4, 2014 in Respect of Houston Regional Sports Network, L.P. (the "Amended Disclosure Statement") [Dkt. # 529] (which incorporates by reference the definitions in and annexed to the Amended Chapter 11 Plan of Reorganization dated September 4, 2014 [Dkt. # 528]).

violates several different provisions of the Bankruptcy Code. The classification scheme was crafted for the sole purpose of manufacturing an impaired accepting class. The *de minimis* "impairment" of the Class 4 claimants is further evidence of the Plan's improper purpose. And the plan improperly discriminates among general unsecured creditors.

The estimation of the Teams' claims bears on this last point – the unfair discrimination. Under the Bankruptcy Code, a plan's unfair discrimination is an absolute barrier to confirmation if the class of creditors against whom the plan unfairly discriminates votes to reject the plan. 11 U.S.C. § 1129(b)(1). The Teams have thus sought to obtain confirmation of their blatantly discriminatory plan – despite the fact that only a small portion of the amount due to them actually represents an unsecured claim – by gerry-rigging the economics of the underlying transaction in order to fabricate, for themselves, a "Class 5" claim that will dilute the vote of the holders of legitimate Class 5 claims, including certain of the Comcast Claimants. Their desired result is to cause Class 5 to vote to accept the Plan, despite the fact that the holders of Claims in Class 5 – who as a matter of law are entitled to be treated *pari passu* with the favored unsecured Claims in Class 4 – stand to receive little or no recovery.

## Reservation of Rights

1. The Disclosure Statement Order grants the Plan Proponents, on the one hand, and the Comcast Entities, on the other hand, the right to file both a brief and a reply with respect to estimation, for voting purposes only, of the Claims held by the Astros Entities and the Rockets Entities, with each such brief and reply due to be submitted to the Court on the same day. Although the Disclosure Statement indicates that the Astros Entities and the Rockets Entities intend to vote over $290,000,000[2] in Claims in Class 5 – an amount that the Comcast Claimants

---

[2] *See* Amended Disclosure Statement, §§ III.B.

believe to be overstated – the Comcast Claimants will await the explanation of these Claims in the Plan Proponent's brief before responding as to the appropriate claim amount for voting purposes. The Comcast Claimants therefore reserve their rights to address the estimated amount of the Claims held by the Astros Entities and the Rockets Entities in their reply brief.

### The Astros Entities and the Rockets Entities Should Not Be Entitled to Vote Priority Claims

2. The Comcast Entities believe that the Astros Entities and the Rockets Entities may attempt to assert and vote that portion of their Claim (approximately $102,500,000) that arose post-September 27, 2013, which is, thus, entitled to either administrative or "gap period" priority under section 507 of the Bankruptcy Code. Section 1123(a)(1) of the Bankruptcy Code precludes the classification – and therefore voting – of these types of claims. 11 U.S.C. § 1123(a)(1). The Astros Entities and the Rockets Entities are not entitled to vote their priority Claims – whether or not such Claims are "voluntarily subordinated" in payment under the Plan – to accept the Plan.

3. Pursuant to Section 7.4 of the Plan, the Astros Entities and the Rockets Entities have waived their right to assert that any past due amounts under the Media Rights Agreements constitute Priority Claims and that all such Claims shall constitute Unsecured Claims. Plan § 7.4. In a typical chapter 11 plan, the consensual subordination of a priority claim would constitute a benefit to the debtor's estate and creditors by increasing the size of the pool of assets available to satisfy unsecured creditors. This Plan is not a typical plan, and this purported "subordination" in fact dramatically *increases* Claims against the Debtor's estate, potentially

diminishes possible recoveries to unsecured creditors[3] and improperly dilutes the votes of holders of Class 5 Claims.

4. Under the unusual transaction proposed in the Plan, the proposed buyers seek to obtain the reorganized debtor in exchange for a nominal payment of $1,000. The satisfaction of claims therefore falls to the Teams. Specifically, pursuant to Section 7.12 of the Plan, the Astros Entities and the Rockets Entities have agreed to pay the "Allowed Administrative Claims, Allowed Cure Claims, Allowed Priority Claims, Allowed Tax Claims, Allowed Other Secured Claims, the Allowed Comcast Lender Secured Claim, and Allowed Trade Claims." Plan § 7.12. As such, but for the Astros Entities' and the Rockets Entities' so-called "waiver" of their right to priority status, they would be obligated under the Plan to pay *themselves* that portion of their Claim that is entitled to priority, and the Reorganized Debtor would bear no responsibility for the satisfaction of those claims. Instead, by "subordinating" their Claim, the Astros Entities and the Rockets Entities have increased the size of Class 5 –Claims which may recover only from the Litigation Trust – by as much as $104,750,000[4] and, thereby, reduced potential recoveries to other holders of Unsecured Claims.

5. Moreover, had the Astros Entities and Rockets Entities not waived their right to priority status, their Priority Claims would have been unquestionably unclassified under the Plan and not entitled to vote. Section 1123(a)(1) expressly precludes the classification of administrative priority and gap period priority claims. 11 U.S.C. § 1123(a)(1) ("[A] plan shall – designate … classes of claims, other than claims of a kind specified in section 507(a)(2),

---

[3] The Comcast Claimants do not believe the litigation against Comcast upon which recoveries to holders of Class 5 Claims is based has merit. As a result, the diminishment in Plan recoveries may be more hypothetical than actual.

[4] *See* Amended Disclosure Statement, §§ IV.F(1)-(2).

507(a)(3), or 507(a)(8) of this title, and classes of interests...."); *see In re Mangia Pizza Investments*, 480 B.R. 669, 678 (Bankr. W.D. Tex. 2012) (recognizing that section 1123(a)(1) prohibits the classification of section 507(a)(8) claims) (citing *In re Greenwood Point, LP*, 445 B.R. 885, 906 (Bankr. S.D. Ind. 2011)).

6. In addition, the Astros Entities and the Rockets Entities should not be able to take Claims that are statutorily required to be unimpaired and unilaterally transform them into impaired claims entitled to vote. To the extent the Astros Entities and the Rockets Entities consent to the conversion of their priority claims to Unsecured Claims, the Astros Entities and the Rockets Entities should nevertheless be considered to be *unimpaired* by the Plan. *See In re Winters*, 99 B.R. 658, 663-64 (Bankr. W.D. Pa. 1989) ("If the priority tax creditors agree to treatment other than what they are entitled to, they are not impaired."); *see also* 11 U.S.C. § 1126(f). As holders of statutorily unimpaired Claims, the Astros Entities and the Rockets Entities should not be entitled to vote alongside holders of *impaired* Class 5 Claims, as doing so dilutes the votes of creditors who are legally entitled to vote to accept or reject the Plan. *See Mangia Pizza*, 480 B.R. at 678-79 ("[G]iven the express statutory treatment afforded tax claims, tax claims should not be given the ability to vote if the taxing authority accepts treatment less than that allowed under *section 1129(a)(9)(C)* and *(D)*. In doing so, creditors who are not given statutory rights will not have their votes diluted.").

## Conclusion

7. At base, the purported payment subordination in the Plan is not an altruistic act that minimizes the cash expense of the estate. Rather, by "waiving" priority status, the Teams are both seeking to *increase* their potential recovery under the Plan and also to control Plan voting by enhancing the size of their unsecured Class 5 Claims. In the same way as this Circuit

does not allow gerrymandering of classes,[5] the Court should not allow the Teams, as Plan Proponents, to manufacture a larger unsecured voting Claim in order to cause Class 5 to vote to accept the Plan.

[Remainder of page intentionally left blank]

---

[5] *See, e.g., In re Greystone III Joint Venture*, 995 F.2d 1278, 1279 (5th Cir. 1991) ("Thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.").

#86391807v6

Dated: September 25, 2014

Respectfully submitted,

/s/

| | |
|---|---|
| Howard M. Shapiro | Vincent P. Slusher |
| Craig Goldblatt | Andrew Zollinger |
| Jonathan Paikin | DLA Piper |
| Wilmer Cutler Pickering Hale and Dorr LLP | 1717 Main Street |
| 1875 Pennsylvania Avenue, N.W. | Suite 4600 |
| Washington, D.C.  20006 | Dallas, TX 75201-4629 |
| (202) 663-6000 | (214) 743-4500 |
| | |
| George W. Shuster, Jr. | Arthur J. Burke |
| Wilmer Cutler Pickering Hale and Dorr LLP | Timothy Graulich |
| | Dana M. Seshens |
| 7 World Trade Center | Davis Polk & Wardwell LLP |
| 250 Greenwich Street | 450 Lexington Avenue |
| New York, NY 10007 | New York, NY 10017 |
| (212) 230-8800 | (212) 450-4000 |

*Counsel for the Comcast Claimants*