**EXHIBIT A**

**GLOSSARY OF DEFINED TERMS**

1.      "1111(b) Election" means the 1111(b) election made by Comcast Lender in the Chapter 11 Case.

2.      "1111(b) Objection" has the meaning set forth in Section 7.7 of the Plan.

3.      "Administrative Claim" means a Claim incurred by the Debtor (or its Estate) on or after the Commencement Date and before the Effective Date for a cost or expense of administration in the Chapter 11 Case entitled to priority under sections 503(b) and 507(a)(1) of the Bankruptcy Code, <u>including</u>, without limitation, Fee Claims, but not including Past Due Astros Media Rights Payments and Past Due Rockets Media Rights Payments.

4.      "Affiliate" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

5.      "Affiliation Agreement" means an agreement between the Debtor and a multichannel video programing distributor providing for the carriage of the Debtor's programing.

6.      "Allowance" means the process by which a Claim may become Allowed.

7.      "Allowed," when used

        (a)      with respect to any Claim, except for a Claim that is an Administrative Claim, means such Claim to the extent it is not a Contested Claim or a Disallowed Claim; and

        (b)      with respect to an Administrative Claim, means such Administrative Claim to the extent it has become fixed in amount and priority pursuant to the procedures set forth in the Plan.

8.      "Appeal" means that certain appeal commenced by Houston Astros, LLC, Astros HRSN GP Holdings LLC, and Astros HRSN LP Holdings LLC on February 7, 2014, and docketed on March 11, 2014, under the caption *In re Houston Regional Sports Network, LP*, No. 4:14-cv-304 (S.D. Tex. Mar. 11, 2014).

9.      "Assets" means, all of the Debtor's right, title and interest of any nature in property of any kind, wherever located, as specified in section 541 of the Bankruptcy Code.

10.     "Assumption Objection" has the meaning set forth in Section 12.1(b) of the Plan.

11.     "Astros Entities" means, collectively, Astros, LLC, Astros Member, Astros Partner, any director appointed by any of the foregoing to the board of directors of the General Partner and each of their respective officers, directors, shareholders and agents.

12.     "Astros, LLC" means Houston Astros, LLC, a Delaware limited liability company.

13.     "Astros Media Rights Agreement" means that certain Amended and Restated Media Rights Agreement dated as of October 29, 2010 by and between the Debtor and Astros, LLC, as

the same may be amended from time to time, including pursuant to the Rockets Media Rights Amendment and the Rockets Media Rights Side Letter.

14. "Astros Media Rights Amendment" means the Amendment and Modification Agreement dated October 22, 2010 by and between the Debtor and Astros, LLC.

15. "Astros Media Rights Side Letter" means the Side Letter to Astros Media Rights Agreement dated October 29, 2010 by and between the Debtor and Astros, LLC.

16. "Astros Member" means HRSN GP Holdings LLC, a Delaware limited liability company.

17. "Astros New Media Rights Agreement" means a media rights agreement between the Astros Entities and the Reorganized Debtor in the form attached to the Investment Agreement.

18. "Astros Partner" means HRSN LP Holdings LLC, a Delaware limited liability company.

19. "Astros Rejection Claim" means any Claims of Astros, LLC arising from the rejection of the Astros Media Rights Agreement pursuant to section 365 of the Bankruptcy Code.

20. "AT&T" means AT&T Teleholdings, Inc., a Delaware corporation.

21. "AT&T Affiliation Agreement" means an Affiliation Agreement to be entered into between AT&T or its designee and the Debtor in form and substance satisfactory to the Proponents and AT&T.

22. "AT&T Member" means AT&T or any subsidiary of AT&T designated to receive the AT&T Reorganized Debtor Membership Interests pursuant to the Investment Agreement.

23. "AT&T Reorganized Debtor Membership Interest" means the membership interests in the Debtor to be issued to the AT&T Member pursuant to the Investment Agreement.

24. "Auction" has the meaning set forth in Section 7.7 of the Plan.

25. "Avoidance Actions" means all Causes of Action of the Estates that arise under chapter 5 of the Bankruptcy Code.

26. "Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified at title 11 of the United States Code, as amended from time to time and applicable to the Chapter 11 Case.

27. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas, or such other court having jurisdiction over the Chapter 11 Case.

28. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as prescribed by the United States Supreme Court pursuant to section 2075 of title 28 of the United States Code and as applicable to the Chapter 11 Case.

29. "Business Day" means any day other than a Saturday, a Sunday or any other day on which commercial banks are required or authorized to close for business in Houston, Texas.

30. "Bid Deadline" has the meaning set forth in Section 7.7 of the Plan.

31. "Cash" means legal tender of the United States of America or readily marketable direct obligations of, or obligations guaranteed by, the United States of America.

32. "Cash Collateral Order" means the Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection, dated March 4, 2014 [B.Ct. ECF 303], together with each of the extensions thereto.

33. "Causes of Action" means all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

34. "Chapter 11 Case" means the case commenced under chapter 11 of the Bankruptcy Code pending before the Bankruptcy Court with respect to the Debtor.

35. "Claim" means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  For avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtor if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries and/or damages are manifested; or (c) at the time of or prior to the Effective Date, the Debtor has received one or more demands for payment for injuries or damages arising from such acts or omissions.

36. "Class A Litigation Trust Beneficial Interests" shall mean those certain class A beneficial interests issued in the Litigation Trust in connection with, and subject to, the Plan, the Confirmation Order, and the Litigation Trust Declaration.

37. "Class B Litigation Trust Beneficial Interests" shall mean those certain class B beneficial interests issued in the Litigation Trust in connection with, and subject to, the Plan, the Confirmation Order, and the Litigation Trust Declaration.

38. "Class C Litigation Trust Beneficial Interests" shall mean those certain class C beneficial interests issued in the Litigation Trust in connection with, and subject to, the Plan, the Confirmation Order, and the Litigation Trust Declaration.

39. "Comcast Affiliation Agreement" means that certain Comcast SportsNet (Houston) Affiliation Agreement dated as of October 29, 2010 by and between the Debtor and Comcast Cable.

40. "Comcast Cable" means Comcast Cable Communications, LLC, a Delaware limited liability company.

41. "Comcast Corporation" means Comcast Corporation, Inc., a Pennsylvania company.

42. "Comcast Entities" means Comcast Corporation, Comcast Cable, Comcast Lender, Comcast Partner, Comcast Services, any director appointed by any of the foregoing to the board of directors of the General Partner and each of their respective officers, directors, shareholders and agents.

43. "Comcast Lender" means Houston SportsNet Finance, LLC, a Delaware limited liability company.

44. "Comcast Lender Cash Collateral" means, collectively, (a) the Cash on hand with the Debtor at 12:00 midnight (Central Time) on the Effective Date and (b) the Debtor's accounts receivable accrued for the period up through 11:59 p.m. (Central Time) on the day prior to the Effective Date.

45. "Comcast Lender Credit Agreement" means that certain Credit Agreement dated as of October 29, 2010 by and among the Debtor and Comcast Lender, and, for certain limited purposes, certain Astros Entities, Comcast Corporation and Leslie Alexander.

46. "Comcast Lender Credit Bid" means a credit bid made by Comcast Lender for the entire Sale Collateral, the entire Comcast Lender Cash Collateral or the entire FF&E Collateral, in each case as set forth in Section 7.7 of the Plan.

47. "Comcast Lender Collateral" means the Assets upon which Comcast Lender has a Lien pursuant to the Comcast Collateral Documents.

48. "Comcast Lender Collateral Documents" means the Comcast Lender Security Agreement, the Comcast Lender Copyright Security Agreement, the Comcast Lender Patent Security Agreement, the Comcast Lender Trademark Security Agreement and the various other documents and agreements related thereto.

49. "Comcast Lender Copyright Security Agreement" means the Copyright Security Agreement dated as of October 29, 2010 by and between the Debtor and Comcast Lender.

50. "Comcast Lender Deficiency Claim" means the Claim of Comcast Lender under the Comcast Lender Loan Documents other than the Comcast Lender Secured Claim.

51. "Comcast Lender Loan Documents" means the Comcast Lender Credit Agreement, the Comcast Lender Security Documents and other instruments and documents related thereto.

52. "Comcast Lender Patent Security Agreement" means the Patent Security Agreement dated as of October 29, 2010 by and between the Debtor and Comcast Lender.

53. "Comcast Lender Residual Collateral" means the Comcast Lender Collateral other than the Abandoned Comcast Lender Cash Collateral and the FF&E Collateral, including the Comcast Affiliation Agreement.

54. "Comcast Lender Secured Claim" means the Claim of Comcast Lender against the Debtor under the Comcast Lender Loan Documents to the extent that such Claim is secured by a Lien upon the Comcast Lender Collateral, which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Case, but only to the extent of the value of the Comcast Lender's interest in the Comcast Lender Collateral pursuant to section 506(a) of the Bankruptcy Code.

55. "Comcast Lender Security Agreement" means the Security Agreement dated as of October 29, 2010 by and between the Debtor and Comcast Lender.

56. "Comcast Lender Trademark Security Agreement" means the Trademark Security Agreement dated as of October 29, 2010 by and between the Debtor and Comcast Lender.

57. "Comcast Partner" means Houston SportsNet Holdings, LLC, a Delaware limited liability company.

58. "Comcast Services" means Comcast Sports Management Services, LLC, a Delaware limited liability company.

59. "Comcast Services Agreement" means the Comcast Network Services Agreement dated October 29, 2010 by and between the Debtor and Comcast Services.

60. "Commencement Date" means February 4, 2014.

61. "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

62. "Confirmation Hearing" means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider confirmation of the Plan.

63. "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan.

64. "Contested" when used with respect to a Claim, means such Claim (a) to the extent it is listed in the Schedules as disputed, contingent, or unliquidated, in whole or in part, and as to which no proof of claim has been filed; (b) if it is listed in the Schedules as undisputed, liquidated, and not contingent and as to which a proof of claim has been filed with the Bankruptcy Court, to the extent (i) the proof of claim amount exceeds the amount indicated in the Schedules; or (ii) the proof of claim priority differs from the priority set forth in the Schedules, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; (c) if it is not listed in the Schedules or was listed in the Schedules as disputed, contingent or unliquidated, in whole or in part, but as to which a proof of claim has been filed with the Bankruptcy Court, in each case as to which an objection was filed on or before the Objection Deadline, unless and to the extent allowed in amount and/or priority by a Final Order of the Bankruptcy Court; or (d) as to which an objection has been filed on or before the Effective Date; <u>provided</u>, that a Claim that is fixed in amount and priority pursuant to the Plan or by Final Order on or before the Effective Date shall not be a Contested Claim.

65.     "Credit Bid Notice" has the meaning set forth in Section 7.7 of the Plan.

66.     "Cure Claims" means the amount under each executory contract and unexpired lease to be assumed under this Plan that must be paid pursuant to section 365(b)(1) of the Bankruptcy Code.

67.     "Debtor" means Houston Regional Sports Network, L.P., a Delaware limited partnership.

68.     "Debtor Constituent Documents" means the LP Agreement, the GP Agreement and any certificates and documents related thereto.

69.     "Debtor in Possession" means the Debtor, in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

70.     "Disallowed" when used with respect to a Claim, means a Claim, or such portion of a Claim, that has been disallowed by a Final Order.

71.     "Disbursing Agent" means, with respect to Litigation Trust Beneficial Interests, the Litigation Trustee and, with respect to all other Claims, Conway MacKenzie or, in each case, any agent selected by the Litigation Trustee or Conway MacKenzie, as applicable, acting to (a) make the Plan Distributions contemplated under the Plan, the Confirmation Order, or any other relevant Final Order; and (b) perform any other act or task that is or may be delegated to the Disbursing Agent under the Plan.  For the avoidance of doubt, the Disbursing Agent for holders of Litigation Trust Beneficial Interests and the Disbursing Agent for holders of all other Claims will not be the same individual or entity.

72.     "Disclosure Statement" means the disclosure statement filed with respect to the Plan, as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules thereto.

73.     "DTV" means DIRECTV, LLC, a Delaware limited liability company.

74.     "DTV Affiliation Agreement" means an Affiliation Agreement to be entered into between DTV or its designee and the Debtor in form and substance satisfactory to the Proponents and DTV.

75.     "DTV Member" means DIRECTV Sports Networks, LLC.

76.     "DTV Reorganized Debtor Membership Interest" means the membership interests in the Debtor to be issued to the DTV Member pursuant to the Investment Agreement.

77.     "Effective Date" means a date selected by the Proponents, which shall be a Business Day that is no later than five (5) Business Days after all of the conditions specified in Section 11.2 have been satisfied or waived (to the extent waivable).

78.     "Estate" means the estate of the Debtor created by section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

79.     "FF&E Collateral" means all furniture, fixtures and equipment of the Debtor that is Comcast Lender Collateral.

80.     "Fee Claim" means a Claim of a Professional Person.

81.     "Final Order" means (a) an order or judgment of the Bankruptcy Court or any other court or adjudicative body as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; or (b) in the event that an appeal, writ of certiorari, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court or any other court or adjudicative body shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed with respect to such order.

82.     "General Partner" means Houston Regional Sports Network, LLC.

83.     "Glossary of Defined Terms" means this Exhibit A of the Plan.

84.     "GP Agreement" means the Second Amended and Restated Limited Liability Company Agreement of Houston Regional Sports Network, LLC dated as of October 29, 2010.

85.     "Investment Agreement" means the Investment Agreement among AT&T, DTV and the Debtor attached hereto as Exhibit B.

86.     "Lien" means a lien as defined in section 101(37) of the Bankruptcy Code.

87.     "Limited Partnership Interests" means, collectively, all equity securities (as defined in section 101(16) of the Bankruptcy Code) in the Debtor, all general and limited partnership interests described in the LP Agreement, and all rights to convert an instrument into an equity security in the Debtor.

88.     "Litigation Trustee" means the Person selected by the Proponents to serve as the initial trustee under the Litigation Trust Declaration.

89.     "Litigation Trust Beneficial Interests" means, collectively, the Class A Litigation Trust Beneficial Interests, the Class B Litigation Trust Beneficial Interests, and the Class C Litigation Trust Beneficial Interests to be distributed pursuant to the Plan.

90.     "Litigation Trust Declaration" means the declaration of trust to be entered into by the Debtor and the Litigation Trustee on the Effective Date.  The Litigation Trust Declaration shall be in substantially the form filed with the Bankruptcy Court as a Plan Document.

91.     "Litigation Trust Property" means all of the assets held at any time by the Litigation Trust, including the Transferred Causes of Action and any proceeds thereof.

92. "LP Agreement" means the Second Amended and Restated Agreement of Limited Partnership of Houston Regional Sports Network, L.P. dated as of October 29, 2010.

93. "McLane Indemnification Claim" means any Indemnification Claim against the Debtor with respect to causes of action (including for, among other things, fraud, fraudulent misrepresentation, fraud by nondisclosure, negligent misrepresentation or omission, and civil conspiracy as asserted in that action styled *Houston Baseball Partners LLC v. McLane Champions, LLC, et al.*) relating to the sale of certain equity interests in the Debtor and/or the General Partner by McLane Champions, LLC to Houston Baseball Partners LLC.

94. "Net Litigation Proceeds" means the proceeds of the Transferred Causes of Action minus any fees and costs incurred by the Litigation Trust in investigating and prosecuting such Transferred Causes of Action and the reasonable costs of administering the Litigation Trust.

95. "Network Services Agreement" means the agreement between the Reorganized Debtor and DTV providing for the management of the Reorganized Debtor.

96. "New Media Rights Agreements" means the Astros New Media Rights Agreement and the Rockets New Media Rights Agreement.

97. "Notice of Confirmation" means the notice of entry of the Confirmation Order to be filed with the Bankruptcy Court and mailed to holders of Claims by the claims, noticing, and balloting agent appointed in the Chapter 11 Case pursuant to section 156(c) of title 28 of the United States Code.

98. "Objection Deadline" means the deadline for filing objections to Claims as set forth in Section 10.1 of the Plan.

99. "Other Secured Claim" means (a) a Claim (other than the Comcast Lender Secured Claim) secured by a Lien on any Assets, which Lien is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, and which is duly established in the Chapter 11 Case, but only to the extent of the value of the holder's interest in the collateral that secures payment of the Claim; (b) a Claim against the Debtor that is subject to a valid right of recoupment or setoff under section 553 of the Bankruptcy Code, but only to the extent of the Allowed amount subject to recoupment or setoff as provided in section 506(a) of the Bankruptcy Code; and (c) a Claim deemed or treated under the Plan as a secured claim; <u>provided</u>, however, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as an Unsecured Claim unless, in any such case the class of which Claim is a part makes a valid and timely election in accordance with section 1111(b) of the Bankruptcy Code to have such Claim treated as a secured claim to the extent Allowed.

100. "Outside Closing Date" has the meaning set forth in Section 7.7 of the Plan.

101. "Past Due Astros Media Rights Payments" means, as of the Effective Date, all outstanding amounts due from the Debtor to Astros, LLC under the Astros Media Rights Agreement.

102. "Past Due Rockets Media Rights Payments" means, as of the Effective Date, all outstanding amounts due from the Debtor to Rocket Ball under the Rockets Media Rights Agreement.

103. "Person" means an individual, corporation, partnership, limited liability company, joint venture, trust, estate, unincorporated association, unincorporated organization, governmental entity, or political subdivision thereof, or any other entity.

104. "Petition Date" means September 27, 2013.

105. "Plan" means this chapter 11 plan, either in its present form or as it may be amended, supplemented, or otherwise modified from time to time, and the exhibits and schedules hereto, as the same may be in effect at the time such reference becomes operative.

106. "Plan Distribution" means the payment or distribution under the Plan of Cash, Assets, securities or instruments evidencing an obligation under the Plan to the holder of an Allowed Claim.

107. "Plan Distribution Date" means with respect to any Claim the earlier of: (a) the Effective Date or a date that is as soon as reasonably practicable after the Effective Date, if such Claim is then an Allowed Claim; or (b) a date that is as soon as reasonably practicable after the date such Claim becomes Allowed, if not Allowed on the Effective Date.

108. "Plan Documents" means the forms of documents that aid in effectuating the Plan as specifically identified as such herein and filed with the Bankruptcy Court as specified in Section 1.5 of the Plan including, without limitation, the AT&T Affiliation Agreement, the DTV Affiliation Agreement, the Astros New Media Rights Agreement, the Rockets New Media Rights Agreement, the Investment Agreement, the Network Services Agreement, and the Litigation Trust Declaration.

109. "Priority Claim" means any Claim to the extent such Claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than Secured Claims, Administrative Claims, Tax Claims, Past Due Astros Media Rights Payments and Past Due Rockets Media Rights Payments.

110. "Pro Rata Share" means, with respect to any Claim or Limited Partnership Interest, the proportion that the amount of that Claim or Limited Partnership Interest, as the case may be, in a particular class or group of classes bears to the aggregate amount of all Claims (including Contested Claims) or Limited Partnership Interests, as the case may be, in such class or group of classes.

111. "Professional Person" means a Person retained or to be compensated for services rendered or costs incurred on or after the Commencement Date and on or prior to the Effective Date pursuant to sections 327, 328, 329, 330, 331, 503(b), or 1103 of the Bankruptcy Code in the Chapter 11 Case.

112. "Proponents" means, collectively, Astros, LLC, the Debtor and Rocket Ball.

113. "Proponent Valuation" has the meaning set forth in Section 7.7 of the Plan.

114.  "Qualified Overbid" has the meaning set forth in Section 7.7 of the Plan.

115.  "Qualified Overbidder" has the meaning set forth in Section 7.7 of the Plan.

116.  "Released Avoidance Actions" means any Avoidance Actions released pursuant to Section 4.1(d) of the Plan.

117.  "Reorganized Debtor" means the Debtor, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including the Debtor after its conversion to a Delaware limited liability company.

118.  "Reorganized Debtor Company Agreement" means the limited liability agreement of the Debtor that shall be in effect on and after the Effective Date.

119.  "Replacement Equipment Agreement" has the meaning set forth in Section 7.7 of the Plan.

120.  "Rocket Ball" means Rocket Ball, Ltd., a Texas limited partnership d/b/a the Houston Rockets.

121.  "Rockets Entities" means, collectively, Rocket Ball, Rockets Member and Rockets Partner, any director appointed by any of the foregoing to the board of directors of the General Partner and each of their respective officers, directors, shareholders and agents.

122.  "Rockets Media Rights Agreement" means the Amended and Restated Media Rights Agreement dated as of October 29, 2010 by and between the Debtor and Rocket Ball as the same may be amended from time to time, including pursuant to the Rockets Media Rights Amendment and the Rockets Media Rights Side Letter.

123.  "Rockets Media Rights Amendment" means the Amendment and Modification Agreement dated October 22, 2010 by and between the Debtor and Rocket Ball.

124.  "Rockets Media Rights Side Letter" means the Side Letter to Rockets Media Rights Agreement dated October 29, 2010 by and between the Debtor and Rocket Ball.

125.  "Rockets New Media Rights Agreement" means the media rights agreement between Rocket Ball and the Network in the form attached to the Investment Agreement.

126.  "Rockets Member" means JTA Sports, Inc., a Delaware corporation.

127.  "Rockets Partner" means Rockets Partner, L.P., a Delaware limited partnership.

128.  "Rockets Rejection Claim" means any Claims of Rocket Ball arising from the rejection of the Rockets Media Rights Agreement pursuant to section 365 of the Bankruptcy Code.

129.  "Sale" has the meaning set forth in Section 7.7 of the Plan.

130.  "Sale Collateral" has the meaning set forth in Section 7.7 of the Plan.

131. "Schedule of Rejected Executory Contracts and Unexpired Leases" means the schedule to be filed by the Debtor with the Bankruptcy Court as part of the Disclosure Statement, as may from time to time be amended at any time prior to the commencement of the Confirmation Hearing, identifying each contract and lease the Debtor seeks to reject pursuant to Section 12.1 of the Plan.

132. "Schedule of Assumed Executory Contracts and Unexpired Leases" means the schedule to be filed by the Debtor with the Bankruptcy Court as part of the Disclosure Statement, as may from time to time be amended at any time prior to the commencement of the Confirmation Hearing, (i) identifying each contract and lease the Debtor seeks to assume pursuant to Section 12.1 of the Plan; and (ii) the Debtor's proposed cure amount in respect of each contract and lease identified in such schedule, if any.

133. "Schedules" means the schedules of assets and liabilities and list of equity interests and the statements of financial affairs filed by the Debtor with the Bankruptcy Court, as required by section 521 of the Bankruptcy Code and in conformity with the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be amended or supplemented by the Debtor in Possession from time to time in accordance with Bankruptcy Rule 1009.

134. "Stalking Horse Bid" has the meaning set forth in Section 7.7 of the Plan.

135. "Subordinated Claims" means, collectively, (a) all Claims that either (i) have been subordinated to Unsecured Claims pursuant to section 510(c) of the Bankruptcy Code by a Final Order, or (ii) were filed with the Bankruptcy Court after the applicable claims bar date; and (b) all McLane Indemnification Claims.

136. "Tax Claim" means a Claim against the Debtor that is of a kind specified in section 507(a)(8) of the Bankruptcy Code.

137. "Trade Claim" means a Claim against the Debtor that is (a) not secured by collateral and (b) held by an entity other than an insider or an Affiliate of an insider that is expected to provide ongoing goods, services or benefits to the Reorganized Debtor on and after the Effective Date.

138. "Transferred Causes of Action" means, collectively, (a) all Avoidance Actions other than Released Avoidance Actions and (b) all Causes of Action of the Debtor as of the Effective Date, not otherwise released pursuant to the terms herein, against one or more of the Comcast Entities, including Causes of Action under section 510(c) of the Bankruptcy Code or Causes of Action arising from antitrust violations, fraud, negligent misrepresentation, unfair competition, bad faith, breach of contract and breach of fiduciary duty; provided that for the avoidance of doubt, no Avoidance Action or Cause of Action against the Astros Entities or Rockets Entities shall be transferred to the Litigation Trust.

139. "Unsecured Claim" means any Claim against the Debtor other than an Administrative Claim, a Priority Claim, a Tax Claim, the Comcast Lender Secured Claim, an Other Secured Claim, a Trade Claim or a Subordinated Claim.  In the interest of clarity, the Proponents acknowledge that the Astros Rejection Claim, the Rockets Rejection Claim, the Past Due Astros Media Rights Payments, the Rockets Past Due Media Rights Payments and, if not subordinated, the Comcast Lender Deficiency Claim, each constitutes an Unsecured Claim.

140. "Voting Deadline" means (i) for any party other than the Comcast Entities, 5:00 p.m. (prevailing Central Time) on September 25, 2014, and (ii) for the Comcast Entities, 5:00 p.m. (prevailing Central Time) on September 29, 2014.

# **EXHIBIT B**

# **INVESTMENT AGREEMENT**